KATE F. BOLAND, v. JAMES TIERNAY *et al*, Appellants.

**Wills:**  REAL ESTATE TREATED AS PERSONALTY:  WHEN.   Where a
1    will authorizes the executor to sell the devised real estate, the
     same will be treated as personalty for the purpose of carrying
     out the terms of the will.

**Same:**  POWER OF EXECUTOR TO SELL REAL ESTATE.   Where a de-
2    visor expresses the desire that his executor shall sell the de-
     vised real estate for the purpose of distribution, the executor
     is not clothed with an express trust, and his authority to sell
     the same ceases with his discharge.

**Same:**  FAILURE TO SELL: DEVISE.   Where the power of the exe-
3    cutor is to sell the devised real estate for the purpose of dis-
     tribution, failure to exercise the power will not defeat the
     demise.

**Same:**  DEVISEE'S TITLE:   HOW DIVESTED.   Where real estate is
4    devised with a simple power of sale in the executor, the only
     means of divesting the devisee of title is by sale of the land.

**Same:**  ELECTION TO TAKE THE LAND:   RECONVERSION.   Discharge
5    of the executor, without having sold the land and with con-
     sent of the beneficiaries, constitutes an election by the devisees
     to take the land and is a reconversion.

**Accounting.**  RENTS AND PROFITS:  MEASURE OF DAMAGES.   In an
6    accounting for rents and profits, the measure of damages is the
     reasonable value of the use of the premises, and where the
     petition alleges about $200 due, and the prayer is for all rents
     and profits received, the plaintiff should have judgment for
     full amount found due.

*Appeal from Plymouth District Court.*—Hon. John F. Oliver, Judge.

Tuesday, October 14, 1902.

Action to quiet title to land and for accounting of rents and profits.   Decree as prayed.   Defendants appeal. —*Affirmed.*

*Martin & Martin* for appellants.

*Geo. C. Scott* for appellee.

Ladd, C. J.—James Tiernay died testate, March 19, 1891, leaving as his only near relations a son, J. J. Tiernay, and two grandchildren, James T. Kelley and the plaintiff. The son was a bachelor, and had always resided with deceased, as had also the grandchildren, who were orphans, from their infancy.   The bulk of the estate was left to the son.   Certain moneys invested in notes and mortgages in Carroll county were bequeathed to the grandchildren, and land in Plymouth county was devised to them as follows: "It is my will and I hereby give and bequeath to my said grandchildren the south half of the southwest quarter of section thirty-four, township ninety-three, range forty-four (S. ½ of S. W. ¼ of 34—93—44) in Plymouth county, Iowa; and I desire my executor to dispose of the same, and invest the proceeds of the same by loaning on good security, and the entire amount thus accumulated be equally divided between said children when the youngest becomes twenty-five years of age.   This, however, shall be upon the express condition that they be faithful children, both in virtue and morality, and they be faithful to the creed in which they were baptized, and perform their duties as by said creed required.   When said time as above named has elapsed, and each of said children receiving from the parish priest in the parish in which they may

reside a certificate showing that he or she has lived up to the practical requirements of the church, said money shall be divided by the executors as aforesaid. In case either of said children shall fail to receive such certificate, the other one shall take the money from this source intended for him. In case both of said children fail to get said certificate, then said money shall go to my son, James Tiernay." The plaintiff was born in 1874, and her brother several years previous. She has complied with all conditions of the will. Whether her brother has is not material, for, if he failed, she took under the will, and, if he met the conditions, he has conveyed his interest to her. The will also required the son to maintain and educate them until they became of age. This obligation to plaintiff was performed, and, in addition thereto, her expenses at a select school for three years longer were voluntarily met by her uncle. The moneys in Carroll county had not been well cared for by an agent, and a mortgage on land was accepted in settlement. This was subsequently foreclosed by the executor, and title obtained. In April, 1895, James Kelley desired his portion of the property, and, as a result of negotiations, took the Carroll county farm, and conveyed his interest in the 80 above described to the plaintiff, giving her a note of $800, secured by mortgage, as the difference. This was done in May of that year, and upon the advice and consent of the executor. At the same time the executor directed his attorney to procure his discharge as such and as guardian of said children. Both consented thereto without an accounting, and acknowledged payment of their respective shares in full. On June 19, 1895, orders of discharge were entered as prayed, without making any account whatever. The plaintiff continued to attend school until the summer of 1896. The 80 acres of land had not been sold, and was referred to by her uncle as belonging to plaintiff. In November of that year she appears to have excited his

displeasure by insisting on making her own choice of husband, and since then their relations have not been amicable. In March, 1898, he executed a deed of the 80 acres to the defendant John Holden. The object of this action is to quiet title against both Tiernay and Holden, and to recover rents and profits since Tiernay's discharge as executor.

I. The intention of the testator that the 80 acres of land be sold by the executor is manifest. The direction is explicit, and its performance obligatory. For the purpose of carrying out the terms of the will, then, the land was to be treated as personalty. "Nothing is better established than this principle:
that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted." *Fletcher v. Ashburner*, 1 Brown, Ch. 497; *Craig v. Leslie*, 3 Wheat. 563 (4 L. Ed. 460); *Tazewell v. Smith Adm'r*, 1 Rand. 313 (10 Am. Dec. 533); *Hood v. Hood*, 85 N. Y. 561; *Fahnestock v. Fahnestock*, 152 Pa. 56 (25 Atl. Rep. 313, 34 Am. St. Rep. 623). This doctrine is elementary, and rests on the maxim that equity regards that done which ought to be done. It is a fiction indulged in for the better administration of the property. The law is conceded to be as stated, and that the real estate was constructively converted into money for the purpose of distribution as of the date of decedent's death.

*1. WILL: real estate treated as personalty when.*

II. The land was not conveyed by Tiernay to Holden until nearly three years after the former's discharge as executor of the estate. Appellants insist he was vested by will with the title as trustee, and hence that ceasing to be executor did not deprive him of the power to sell. It is at least doubtful whether the executor is ever treated as trustee with respect to the land when the sale is mandatory. He may be with respect to the proceeds for some third party, but

*2. SAME: power of executor to sell real estate.*

not when merely managing them incidental to their distribution at a specified time. Tiernay was nominated as executor "to settle the estate and carry out the terms of this will." Payment of the proceeds of the sale, with accumulations, were to be made to the beneficiaries when they attained the age of 25 years,—in about 10 years. There is nothing in the instrument to indicate trust or confidence other than implied in his selection. No authority is conferred on his successors, and no discretion given in determining whether the land shall be sold. The instrument fails to show any intention to repose confidence in him personally. He is trusted merely as executor. The case is like *Lees v. Wetmore*, 58 Iowa, 170, where the court held that a similar provision in the will imposed no duties beyond those ordinarily exacted from an executor. In *Hogdin v. Toler*, 70 Iowa, 22, the will empowered, but did not direct, "the executors, or the survivor of them," to sell upon credit or otherwise, as they might think proper; and the court, in holding this power did not devolve on an administrator with the will annexed, said: "That personal trust and confidence were reposed by the testator in the persons named by him as executors we have no doubt. Such trust was not reposed in them as executors, but as individuals, for they, or the survivor of them, were empowered to sell. A large discretion was given them, for the will does not direct that a sale should be made." Some difficulty has been experienced in locating the line to be drawn between the duties to be performed by the executor *virtute officii* and those which devolve upon him as trustee. It depends upon whether under the wording of the will, reliance is had on the individual or the officer. The question is directly involved in cases determining whether an administrator with the will annexed, possessing the same authority as the executor by virtue of a statute, may exercise the power of sale given the executor by the terms of the will. In *Mott v. Ackerman*, 92 N. Y.

553, the court, speaking through Finch, J., said: "Where the will gives a power to the donee in a capacity distinctively different from his duties as executor, so that as to such duties he is to be regarded wholly as trustee, and not at all as executor, and where the power granted or the duty involved imply a personal confidence reposed in the individual over and above and beyond that which is ordinarily implied by the selection of an executor, there is no room for doubt or dispute. In such case the power and duty are not those of executors *virtute officii* and do not pass to the administrator with the will annexed. But outside of such cases the instances are numerous in which by the operation of a power in trust authority over the real estate is given to the executor as such and the better to enable him to perform the requirements of the will. It will not do to say in the present state of the law that, whenever a trust or trust power is conferred upon executors relating to real estate, some personal confidence distinct from that reposed in executors is implied. An executor is always a trustee of the personal estate for those interested under the will. We have recently so decided where the trust character could only be derived from the office and its relation to rights claimed through it. *Wager v. Wager*, 89 N. Y. 161. And we have held, also, that, where a will devised and bequeathed to the executors the residue of real and personal estate, in trust to sell and convert the same to divide the balance into shares, to invest it into bond and mortgage, and to pay over the income for a time, and finally the principal, the proceeds of the land became legal assets in the hands of the executor, for which he was liable officially, and for which his sureties were responsible; and that an objection that he held the proceeds as trustee, and not as executor, and could only be made accountable in equity, was not well taken. *Hood v. Hood*, 85 N. Y. 571. We have no doubt, therefore, that, where a power of sale is given to the executors for the purpose

of paying debts and legacies or either, and especially where there is an equitable conversion of land into money for the purpose of such payment and for distribution, and the power of sale is imperative, and does not grow out of a personal discretion confided to the individual, such power belongs to the office of executor, and, under the statute, passes to and may be exercised by the administrator with the will annexed." In *Potts v. Breneman*, 182 Pa. 295 (37 Atl. Rep. 1002), the authorities of that state are reviewed, and the conclusion of the court thus stated (quoting in part from *Lantz v. Boyer*, 81 Pa. 325): "It may now be considered as definitely settled that whenever a power is given by will to executors to sell real estate with a view to the distribution of the proceeds among legatees, such power belongs to them *virtute officii*, and may be exercised by administrators *de bonis non* with the will annexed. It seems equally clear that it makes no difference whether the distribution is to be immediate, or upon the expiration of a certain period of time, or upon the uncertain contingency of a life or lives." In *Drummond v. Jones*, 44 N. J. Eq. 53 (13 Atl. Rep. 611), the result of previous decisions in that state is thus summarized: "Where a power of sale is given to a particular person by words indicating personal confidence, or special reliance on the judgment of that particular person, as that the power shall not be exercised except the donee decides that its exercise is necessary or proper, there being manifest from the words of the grant that the creator of the power meant to leave the question whether the power should be exercised or not wholly dependent upon the judgment of the donee, no one, in such case, can exercise it but the donee. *Chambers v. Tulane*, 9 N. J. Eq. 146; *Naundorf v. Schumann*, 41 N. J. Eq. 14 (2 Atl. Rep. 609). But where the power is annexed to the office of executor and it is created to enable an executor to perform the duties im-

posed on him by the will, there, although created by words giving the executor a right to exercise a discretion as to the time or the method of the sale, the power will be considered unpersonal, and as a thing incidental to the office, which may be used by any person who may be charged with the duties of the office. 'In such cases,' said Chief Justice Beasley in *Weimer v. Fath*, 43 N. J. Law, 1, 'the power is annexed to the office, and not to the specified donee of the power.' " To the same effect, see *Schroeder v. Wilcox*, 39 Neb. 139 (57 N. W. Rep. 1031); *Davis v. Hoover*, 112 Ind. 423 (14 N. E. Rep. 468). The distinction made is so clearly pointed out by these authorities that nothing need be added. With his discharge as executor, authority to sell the land ended.

III. The 80 acres of land in Plymouth county, though constructively, was not actually, converted. The title, by the terms of the will, passed to the beneficiaries with the power of sale by the executor added. That power was for the purpose of administration only, and failure to exercise it cannot be permitted to defeat the devise. As said in *Greenland v. Waddell*, 116 N. Y. 234 (22 N. E. Rep. 367, 15 Am. St. Rep. 400): "The executors took no title in the real estate as such. They were vested with a power to deal with it as personal estate for the purposes of the execution of the trust created by the will." Appellant seems to think that conferring the power of sale on the executor necessarily passed the title to him. Regardless of who acquired the title, he took "exactly that quantity of interest which the purposes of the trust required." In whomsoever the title vested, whether it was allowed to descend by operation of law, or was transferred to the executor, or descended to the devisee, it was for the purpose specified. *Ebey v. Adams*, 135 Ill. 80 (25 N. E. Rep. 1013, 10 L. R. A. 162); 2 Jaram. Wills, 305, 306. The language used by the court in *Eneberg v. Carter*, 98 Mo. 647, (12 S. W. Rep. 522, 14

*3.* SAME: failure to sell: devise.

Am. St. Rep. 664), is particularly applicable: "In the present case there was certainly no express devise in fee to the executor, nor are there any such words in the will as to raise a fee in him by force of a strong implication. Therefore the fee remained in the heirs at law, both by the devise to them as well as by the statute of descents, until it should be devested by a sale by the executor under the terms of the will; and until such sale no conversion could occur." Nothing has happened to devest the plaintiff of the title to this land, acquired under the will and the conveyance of her brother.

IV. As already stated, after plaintiff had attained her majority, Tiernay paid her expenses in attending a select school for three years. This was done voluntarily, and without any arrangement for repaying him. She had been a member of his family since the testator's death, and had every reason to believe that whatever money given her was gratuitous. But appellant insists that, as plaintiff had received the expenses of her education, and acknowledged that she had been paid all she was entitled to in her written consent to Tiernay's discharge as executor, she is estopped from claiming this land. The only way the executor could divest the devisees of the title to the real estate was by sale, and this had never been done. The acknowledgment of satisfaction related to her personal estate only. Final settlements seldom, if ever, involve the title and right of possession to realty. As she then had title, derived from the testator, there was no occasion to mention it in the receipt or final accounting, save in giving proper credits for rents and profits.

V. The parties have elaborately argued whether there has been a reconversion. We think the discharge of the executor without having exercised the power of sale, upon his request, acquiesced in by the beneficiaries, sufficient alone to estab-

4. SAME: devisee's title: how divested.

5. SAME: election to take land: reconversion.

lish such election. This will be presumed to have been done with the understanding that an entry of the court to that effect would terminate his duties with respect to the devised premises, and that all interested intended the property to go to the devisees in its original character. .Whether the court should have relieved the executor from his duties before the beneficiaries attained the age fixed in the will is a different matter. It is urged that devisees could not elect before being entitled to the property under the will. Some language in *Hetzel v. Barber*, 69 N. Y. 1, tends to support this contention. But, as there was no conversion in that case, what was said on the subject is mere dictum. The point decided was that, although the beneficiaries were not entitled to the proceeds of the land until 25 years of age, and the executor might, in his discretion, sell, yet they might convey it after attaining their majority, and thereby defeat the executor's power. If those who take under a will may thus dispose of their interests by conveyance or sale,—as is conceded by appellant,—we can think of no reason for depriving them of the right to elect to take the thing devised themselves, rather than the proceeds derived from its sale. If the right to the proceeds depends upon some contingencies, of course the election before may not take effect till such contingency is ended. *Meek v. Devenish*, 6 Ch. Div. 566. As a general rule, all persons *sui juris* may elect a reconversion. *Craig v. Leslie*, 3 Wheat. 563 (4 L. Ed. 460); *Baker v. Copenbager*, 15 Ill. 103 (58 Am. Dec. 600); *Greenland v. Waddell*, 116 N. Y. 234 (22 N. E. Rep. 367, 15 Am. St. Rep. 400). Without deciding the point, it is enough to say that both devisees had attained to the age required when this action was begun, and plaintiff was then entitled to the property devised.

VI. It follows from what has been said that plaintiff is entitled to have her title quieted against the adverse

claims of the defendants, and to be allowed the rents and profits accruing since 1895. The measure of recovery is the reasonable value of the use, not the amount of rent collected, as suggested by appellant. *Schoonover v. Osborne*, 117 Iowa, 427; *Bradley v. Brown*, 86 Iowa, 359. The petition alleged that there would "be due on accounting from the defendant John Holden about $200, received by him as rents and profits received by him out of said real estate," but the prayer is that he "be ordered to account for all rents and profits received by him out of said real estate," and that she have judgment for the amount found due. Clearly, she was not limited to a judgment for $200, but was entitled to recover whatever sum might be established by the evidence.—AFFIRMED.

6. ACCOUNT-
INGS: rents
and profits:
measure of
damages.