IN RE ESTATE OF WELLS WILLITS.

JOHN M. WILLITS, APPELLANT, V. ROBERT EARLE CONKLIN ET AL., APPELLEES.

FILED MARCH 24, 1911.    No. 16,236.

1. Wills: CONSTRUCTION: WORDS OF LIMITATION. The rule that words of limitation shall be applied to the death of the first taker without issue during the life of the testator is extremely technical in its character, and does not apply where there are any indica-

tions, however slight, that the testator referred to death subsequent to his own demise.

2. ———: ———: SURVIVORSHIP. The general rule is that the period of time to which survivorship relates depends upon the intention of the testator, rather than upon technical language used in a particular clause in a will.

3. ———: ———: EQUITABLE CONVERSION. Where power is given to an executor to convert the real estate into money, and he is directed to pay the proceeds over to the guardians of certain minors during their minority, a court of equity will decree that an equitable conversion of the real estate of the testator took place, and that the estate should be distributed as personal property in accordance with the terms of the will.

4. ———: ———: ESTATE BEQUEATHED. A testator devised and bequeathed all his property, real and personal, to A and B, two grandsons, share and share alike, and provided that in case of the death of either his share should revert to the other. He also gave power to the executor to sell the real estate, and directed that the proceeds should be paid to the lawful guardians of the minor grandsons and held in trust "until each attain his majority when he shall have his share." Held, That the period ·of distribution limited the survivorship, and that the gift took effect at the testator's death, with a gift over to the survivor upon a contingency terminable at the attainment of majority.

5. ———: ———: ———. Held, further, That since A attained his majority before his death, the contingency by which his title might be divested and B substituted became impossible, and B thereafter had no interest in the one-half of the estate given to A.

APPEAL from the district court for Harlan county: HARRY S. DUNGAN, JUDGE. Affirmed.

John Everson, C. M. Miller and C. C. Flansburg, for appellant.

J. G. Thompson and Gomer Thomas, contra.

LETTON, J.

In 1899 Wells Willits and Rachael C. Willits, husband and wife, resided in Harlan county, Nebraska. In that year Mrs. Willits died, leaving her husband and her only

son, Ed L. Willits, surviving. In 1882 Ed L. Willits was married to his first wife, Blanche Conklin, who died in 1887, leaving as the only issue of the marriage a son, Lee C. Willits, born July 4, 1886. In 1898 Ed. L. Willits was married to Rebecca Metz. The only issue of this marriage was John M. Willits, who was born May 14, 1902, and is still living. On October 8, 1903, Ed L. Willits died intestate, leaving surviving him his sons, Lee C. Willits and John M. Willits, and his widow, Rebecca M. Willits. His father, Wells Willits, died on November 13, 1903. From the time his wife died, in 1899, until the time of his death, Wells Willits lived in the family of Ed. L. Willits. He was an invalid, having suffered from locomotor ataxia for years, and was virtually on his death bed when his son died. About two weeks after his son's death he executed a will, which was duly probated. The executor named in the will qualified, sold the personal property and real estate, and paid a portion of the proceeds in equal sums to the guardians of the respective minors before Lee C. Willits reached his majority. Lee C. Willits died on the 23d of September, 1907, after attaining his majority. He left a will by which his property was bequeathed to the defendants, Robert Earle Conklin and Mary E. Conklin.

The present controversy arose upon the final distribution of the proceeds of the estate of Wells Willits. Upon the final report of the executor being filed in the county court, John M. Willits by his guardian filed a petition in that court praying for a construction of the will, that the money paid by the executor to the guardian of Lee C. Willits be recovered back, and in substance that he be declared the owner of the entire estate. The county court held in substance that one-half the estate vested in each of the grandchildren, and directed the payment of the proceeds to the guardian of John M. Willits and the executor of the estate of Lee C. Willits, respectively. On appeal to the district court this judgment was affirmed, and the judgment is now before us for review.

The point at issue is the construction which should be

placed upon the second and third paragraphs of the will, which are as follows: "I give, devise and bequeath all my property both personal and real of which I may die possessed to my grandsons, Lee C. Willits and John M. Willits, share and share alike. In case of the death of either of the above named grandsons, his share of my estate to revert to the other.

"I give and confer upon the executor, to be hereinafter named, and acting under this will, full power and authority, by public or private sale, as he shall deem expedient, to make sale of all real estate of which I may die possessed and do all needful acts to convey title to the purchasers thereof. The proceeds of such sales to be turned over to the lawful guardians of my grandsons, above named, and held in trust by said guardians, until each attain his majority when he shall have his share."

The question presented is: What right in the property did Lee C. Willits possess at the time of his death? Was it an indefeasible vested estate, or did all the property devised to him "revert to the other" grandson on the happening of that event? The surviving grandson takes the position that on the death of Lee C. Willits at any time the entire estate passed to him, and that the legatees of Lee took nothing by his will. He contends that the intention of the deceased was to divide his estate equally between his two grandchildren and to prevent the diversion of the property to the heirs or legatees of either, and that the proper construction to be placed upon the will is that, "*whenever* the first legatee dies, whether before or after the testator, the other shall take; or it means that, if one dies before some contingency which the testator then had in his mind, the other shall take all; or it means that, if the first is prevented from taking by dying during the lifetime of the testator, the other shall be substituted for him." On the other hand, the defendants contend that the contingency referred to in the will was death before the death of the testator, and that in any event the estate of Lee C. Willits became absolute upon his arrival at 21 years of age.

The general rule is that, where there is a legacy to a person absolutely, and a provision that in case of his death the estate shall revert to another, the contingency referred to is the death of the first taker before the death of the testator; but special circumstances will prevent the application of this general rule. In *Schnitter v. McManaman*, 85 Neb. 337, it is said: "The rule that the words of limitation shall be applied to the death of the first taker without issue during the life of the testator is said to be extremely technical in its character, and does not apply where there are indications, however slight, that the testator referred to death subsequent to his own demise." In *Britton v. Thornton*, 112 U. S. 526, Mr. Justice Gray says: "When indeed a devise is made to one person in fee, and 'in case of his death' to another in fee, the absurdity of speaking of the one event which is sure to occur to all living as uncertain and contingent has led the courts to interpret the devise over as referring only to death in the testator's lifetime. 2 Jarman, Wills, ch. 48; *Briggs v. Shaw*, 9 Allen (Mass.) 516; Lord Cairns in *O'Mahoney v. Burdett*, 7 L. R. H. L. 388. But when the death of the first taker is coupled with other circumstances which may or may not ever take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words, upon death, under the circumstances indicated, at any time, whether before or after the death of the testator. *O'Mahoney v. Burdett*, above cited; 2 Jarman, Wills, ch. 49."

It is elementary that in the construction of a will it is the duty of the court to effectuate the intention of the testator if it can be ascertained, and in order to ascertain this intention the court should place itself as nearly as possible in the position of the testator, and consider not only the particular clause of the will which is in dispute, but the whole instrument. *McCulloch v. Valentine*, 24 Neb. 215; *Chick v. Ives*, 2 Neb. (Unof.) 879; *Yoesel v. Rieger*, 75 Neb. 180; *Lewis' Estate*, 203 Pa. St. 219; 30

Am. & Eng. Ency. Law (2d ed.) 666; *Albin v. Parmele,* 70 Neb. 740.

Appellant bases much of his argument upon the provision that, in case of the death of either grandson, his share "shall revert to the other," but we think he places too much stress upon this phrase, and does not give sufficient consideration to the other provisions of the will.

Coming now to a consideration of the whole instrument: The will first devises and bequeaths all the testator's property, both real and personal, to the grandsons, share and share alike. This language clearly conveys a vested interest upon the death of the testator to each grandson. The next provision is that, in case of the death of either grandson, his share shall revert to the other. Standing alone, these two provisions would, under the general rule, apply to death before the death of the testator, but, as we shall see, there are other clauses which must be taken into account. The next paragraph empowers the executor to sell and convey all the real estate, and further directs: "The proceeds of such sales to be turned over to the lawful guardians of my grandsons, above named, and held in trust by said guardians, until each attain his majority when he shall have his share." While this provision does not expressly direct the executor to convert the real estate into money, it is apparent that it was the intention of the testator that the land should be sold and the proceeds paid during the minority of the grandsons, otherwise the provisions for payment to the guardian would be useless, and the direction that each shall have his share at majority would also be without force. 1 Jarman, Wills (6th ed.) 558; *Chick v. Ives, supra.* The direction in this clause that the proceeds shall be held in trust for each grandson until his majority, *"when he shall have his share,"* seems to us to be of great importance in the ascertainment of the testator's intention. From the circumstances at the time the will was made it is evident that he knew and realized his condition, and that the possibility of his living until either

grandson reached the age of 21 years was beyond his most sanguine hope. He was an aged man, his wife was dead, he was suffering from a fatal disease and required constant care and attention. In his ailing and stricken condition he had just sustained the loss of his only son. He believed that his days were numbered, and so expressed himself. Placing ourselves as nearly as we can in his position, we think it clear that the contingency of the death of either of his grandsons before his own was not within his contemplation. By the terms of the will the money is placed beyond the reach of either until he reaches majority. If he die before majority, the fund which is then in the hands of either the executor or guardian must pass to the other grandson. It was evidently in the testator's mind that until each grandson arrived at man's estate it was improbable that he should have issue of his own and thus perpetuate the family name. He desired to take reasonable precaution that his property should remain in the family. We cannot think that it was his purpose to divert the estate conferred upon one grandson from the children of such grandson, or that the other should receive the whole estate. We think it was his intention that the period of distribution should limit the survivorship, and that the executory. gift over to the surviving grandson was limited by its terms to that period.

The language of Lord Hatherley in *O'Mahoney v. Burdett,* 7 L. R. H. L. (Eng.) 388, 403, in discussing the second and fourth rule in *Edwards v. Edwards,* 15 Beav. (Eng.) 357, is peculiarly applicable: "So again, I apprehend, in another class of cases, many of which were cited before us, which have been decided since *Edwards v. Edwards,* one of them having been before myself; in those cases where the court has found upon the face of the will a positive direction to pay over the personalty to the legatee, or to make a distribution among several legatees at a given time, the period of distribution being fixed at which, as it appears from the face of the will, the whole

estate was intended to be entirely disposed of and divided,
and to pass from the hands of the executors, the courts
have laid hold of that circumstance to say,   'We hold this
defeasance  to  be  before  that  period  of  distribution
arrives,' holding it to be an unreasonable construction
of the testator's will to say that he directed on the one
hand that the money shall be absolutely paid and divided
and distributed, and put into the hands of those who, hav-
ing it in their hands, will of course spend it without any
farther trust, and on the other hand that a subsequent
event, namely, a certain person's dying childless after
.that distribution has taken place, should divest the prop-
erty, that is to say, make it necessary for the executor
to take steps to get back again, and recall that money
which he has paid in order to hand it over to those who
would take under the executory devise.   The courts have
held that that was unreasonable.   In the case I have al-
luded to it was a trade, which was directed to be carried
on by the executors until the son attained a certain age,
when the trade (and not the trade only, but other prop-
erty as well) was to be handed over to him, and then
there was what appeared to be a divesting executory
devise in the event of his dying without issue.   I held
in that case, and I should be disposed to hold the same
again if a similar case came before me, that the time was
evidently pointed out when the final and complete dis-
tribution was to be made, and that the executory devise
must be held to be referred to that time, because it was
impossible to call the property back again and hold that
the executory devise was then to take effect after there
had been that full and complete distribution of the funds."
As Vice-Chancellor Wood, the same judge decided *Dean*
*v. Handley,* 2 Hem. & Mill. (Eng.) 635, where there was
a gift in remainder and a gift over upon a contingency
determinable at the period of distribution.   Mr. Hawkins
in his treatise on Wills (2d. ed.) *254, deduces the follow-
ing rule from the cases:   "Where there is a bequest to
one person, and *'in case of his death'* to another, the gift

over is construed to take effect only in the event of the death of the prior legatee *before the period of payment* or distribution, unless an intention appear to the contrary. *Cambridge v. Rous,* 8 Ves. Jr. (Eng.) 12; *Ommancy v. Bevan,* 18 Ves. Jr. (Eng.) *291; *Home v. Pillans,* 2 Myl. & K. (Eng. Ch.) 15." See also 2 Jarman, Wills (6th ed.) *1602, *1609, *1610; Theobald, Wills (Can. ed.) 681, 685; *Lewis' Estate,* 203 Pa. St. 219. We find it unnecessary to cite or consider at length all the cases an examination of which has aided us to reach this conclusion. Most of them may be found collected and examined in an exhaustive monographic note to *Smith v. Smith,* 25 L. R. A. n. s. 1045, 1145 (157 Ala. 79).

We are of opinion that the gift took effect at the testator's death, with a gift over to the survivor upon a contingency terminable at the attainment of majority, which was the period of distribution.

The contingency by which the title of Lee C. Willits might be divested and the other grandson substituted became impossible on Lee attaining his majority; after that time the appellant had no interest in the half of the estate given to the first taker.

It follows that the judgment of the district court should be, and is,

                                        AFFIRMED.

REESE, C. J., dissents.