IN RE ESTATE OF C. S. JACKSON.

ELLA M. MARTIN, Administratrix de bonis non, Appellee, v. FIDELITY & DEPOSIT COMPANY, of Maryland, Appellant.

No. 42216.

FEBRUARY 13, 1934.

Irving C. Johnson, for appellant.

A. J. Walsmith, for appellee.

KINTZINGER, J.—C. S. Jackson, deceased, of Mahaska county, Iowa, left a last will in which she nominated Oscar Jackson and S. D. Wingate, both of Seattle, Washington, as executors of her last will and testament. The will was probated in Mahaska county, Iowa. The executors named in the will having refused to act, the court appointed Harold J. Cunningham as administrator with the will annexed. He duly qualified and filed a bond signed by the defendant company as surety, and entered upon the duties of the office.

The will, after disposing of all of the estate by numerous bequests, not necessary to be recited, also provides:

"Lastly, I hereby nominate, constitute and appoint my grandson, Oscar Jackson of Seattle, Washington, and S. D. Wingate of Seattle, Washington, as the executors of this my last will and testament, *and I hereby expressly direct my said executors to reduce all of the assets of my estate, whether real or personal, to cash and to make distribution of the cash proceeds derived therefrom in the manner as I have hereinbefore directed distribution to be made.*" (Italics ours.)

It is conceded that at the time of her death the estate of the decedent consisted of the following property:

Four lots in Monte Vista, Colorado.
Money in a savings account in People's Trust & Savings Bank of Oskaloosa ............................................ $3,770.40
Money due from Dexter-Horton National Bank at Seattle, Washington, on contract for sale of real estate made by decedent in her lifetime................ 1,140.25
all of which moneys were duly collected and received by the administrator with the will annexed.

1048

The administrator also received as proceeds from the
sale of the four lots in Colorado the sum of........ 615.58
 _____

The total amount received by administrator.............. $5,526.23

It is also conceded that the total amount of expendi-
tures paid out by the administrator on behalf of said
estate was ............................................................................ 4,777.59
 _____

Showing a balance due the estate of....................................... $ 748.64

After receiving the foregoing amounts and paying the fore-
going expenses, the administrator left for parts unknown. There-
upon Ella M. Martin, plaintiff, was appointed administratrix *de
bonis non.*

A final report, showing receipts and disbursements as herein-
above set out, was filed for the administrator with the will annexed
by his attorney.

On March 20, 1933, at the hearing on his final report, due
notice of which had been given as prescribed by order of court, the
court approved the same and included in the order of approval the
following order:

"And the Court further finds that there is due from said Cun-
ningham, administrator with the will annexed, the sum of $748.64.
And it is further ordered adjudged and decreed that said H. J. Cun-
ningham, administrator with the will annexed, pay Ella M. Martin,
administratrix de bonis non, the above stated amount of $748.64 at
once."

No exception to this order of the court was made or taken by
the defendant in this case or anyone else, and the order and find-
ing of the lower court is final and binding upon the administrator
with the will annexed.

The administrator failed to pay or account for said balance of
$748.64, and this action was commenced against the bonding com-
pany to recover the same.

I. It is claimed that the surety on his bond is not liable
for the $615.58 received from the sale of real estate in a foreign
state, because the executor had no power or authority to sell the
same without probating the will in the state of Colorado. The record
in this case shows that the administrator with the will annexed did

sell the Colorado real estate and did receive therefor the sum of $615.58.

The final report filed for the administrator shows that he sold the Colorado real estate for $615.58. This report was approved by the court without objection on the part of the administrator or the defendant. The court found that said administrator had received from the net proceeds of the sale of the said real estate the sum of $615.58.

Notwithstanding this record, defendant claims the administrator had no authority, as such, to sell said real estate, and that the sale thereof was not one of his duties, and that his act in so doing was not binding upon the surety under the terms of his bond.

It is claimed that the authority vested in the executors named in the will to sell real estate did not pass to the administrator with the will annexed. As a general rule, it is true that the power conferred upon a certain executor cannot be exercised by an administrator with the will annexed. 24 C. J. 1167. It is otherwise, however, where the will shows an intention to confer the power of sale upon the executor *virtute officii,* and not as involving any personal discretion on his part. In cases where the will itself shows an express direction for the sale of the real estate for the purpose of making distribution as directed in the will, the power of sale passes to the administrator with the will annexed, if the executors named fail to act. 24 C. J. 1167. Feaster v. Fagan, 135 Iowa 633, 113 N. W. 479; Boland v. Tiernay, 118 Iowa 59, 91 N. W. 836; Ellyson v. Lord, 124 Iowa 125, 99 N. W. 582.

The will in the case at bar expressly imposes the duty of selling all of the assets of this estate, whether real or personal, and distributing the proceeds as follows:

"I hereby expressly direct my said executors to reduce all of the assets of my estate whether real or personal to cash and to make distribution of the cash proceeds derived therefrom in the manner as I have hereinbefore directed distribution to be made."

There is no discretion imposed in the particular executors nominated. The administrator with the will annexed was appointed to administer the estate in accordance with the terms of the will. This will could not have been administered without disposing of the real estate wherever located. In the case of Boland v. Tiernay, 118 Iowa 59, loc. cit. 65, 91 N. W. 836, we recognized the rule that:

"It may now be considered as definitely settled that whenever a power is given by will to executors to sell real estate with a view to the distribution of the proceeds among legatees, such power belongs to them *virtute officii, and may be exercised by administrators dc bonis non with the will annexed.*" (Italics ours.)

In the case of Hodgin v. Toler, 70 Iowa 21, 30 N. W. 1, 59 Am. Rep. 435, relied on by appellant, a large discretion was given to the executors, and the court there held that the power to sell did not devolve upon the administrator with the will annexed, because the personal trust and confidence reposed by the testator in the persons named as executors was not reposed in them as executors but as individuals. In that case the will did not expressly direct a sale of the real estate, and as said in Feaster v. Fagan, 135 Iowa 633, 113 N. W. 479:

"There was nothing in this will vesting any discretion or personal trust in the executors, and therefore the case of Hodgin v. Toler, 70 Iowa 22, 30 N. W. 1, 59 Am. Rep. 435" did not apply.

In cases where the power is annexed to the office of executor and is created to enable him to perform the duties imposed on him by the will, the power will be considered unpersonal and as a thing incidental to the office.

"In such * * * cases, the power is annexed to the office, and not to specified donees of the power." Weimar v. Fath, 43 N. J. Law 1.

Under the rule of law supported by the greater weight of authority, where the will expressly directs the executor to sell the real estate and distribute the proceeds of the sale as personal property, the relation created is impersonal, and the power vested thereby passes to his successor. We think the power to sell given the executors named in the will passed to the administrator with the will annexed. This rule is sustained by the following authorities: Ellyson v. Lord, 124 Iowa 125, 99 N. W. 582; Schroeder v. Wilcox, 39 Neb. 136, 57 N. W. 1031; Feaster v. Fagan, 135 Iowa 633, 113 N. W. 479; Boland v. Tiernay, 118 Iowa 59, 91 N. W. 836; 2 Woerner, Administration, 715; Page on Wills 830; 24 C. J. 1167.

II. Under the doctrine of equitable conversion, nothing is better established than the equitable principle that land directed to

be sold and turned into money is to be considered as that species of property into which it is directed to be converted, and this is especially so where the direction is made in a will. 6 R. C. L. 1067.

Equitable conversion may be defined as the constructive alteration in the nature of property by which in equity real estate is considered as personalty, and transmissible and descendible as such, or personalty as realty. 6. R. C. L. 1065; Beaver v. Ross, 140 Iowa 154, 118 N. W. 287, 20 L. R. A. (N. S.) 65, 17 Ann. Cas. 640; Boland v. Tiernay, 118 Iowa 59, 91 N. W. 836; In re Estate of Mount, 189 Iowa 279, 178 N. W. 391; Shillinglaw v. Peterson, 184 Iowa 276, 167 N. W. 709; Hanson v. Hanson, 149 Iowa 82, 127 N. W. 1032.

"It is a well settled rule * * * in the construction of wills, as well as of other instruments, that, when land is directed to be sold and turned into money, courts of equity in dealing with the subject will consider it as personalty." 13 C. J. 859.

Where real estate is devised, with explicit directions in the will that it be sold and the proceeds distributed, such directions operate as an equitable conversion of such realty into personalty. 13 C. J. 865; Inghram v. Chandler, 179 Iowa 304, 161 N. W. 434, L. R. A. 1917D, 713; Blain v. Dean, 160 Iowa 708, 142 N. W. 418; Boland v. Tiernay, 118 Iowa 59, 91 N. W. 836; Hanson v. Hanson, 149 Iowa 82, 127 N. W. 1032; In re Willits' Estate, 88 Neb. 805, 130 N. W. 757, 35 L. R. A. (N. S.) 321; Meekins v. Branning Mfg. Co. (D. C.) 224 F. 202; Griffith v. Witten, 252 Mo. 627, 161 S. W. 708.

In the case of Beaver v. Ross, 140 Iowa 154, loc. cit. 159, 118 N. W. 287, we said:

"The great weight of authority is in favor of the proposition that the conversion takes place at the instant of testator's death, and that all property rights must be determined as if the conversion had taken place at that time, and the rights of the parties are adjusted as if the property were personalty."

The will in this case directs all of the estate, both real and personal, to be reduced to cash and the proceeds distributed in accordance with the terms of the will. There is no escape from the conclusion that the testator directed and intended to have the real estate converted into cash for the purpose of distribution among the legatees. We think the doctrine of equitable conversion fully ap-

plies in this case, and that the cash received from the sale of the Colorado real estate is as much a part of the personal estate of the decedent as was the cash received by the administrator from the Dexter-Horton National Bank in Seattle, Washington, from proceeds of the land contract executed by deceased in her lifetime.

III. It is claimed that the record in this case fails to show that this will was filed for record in the courts of Colorado, and that the administrator with the will annexed never received authority of the court to make a sale of said property. It is sufficient to say that authority of the Iowa court was unnecessary to authorize the executor to sell the real property belonging to the estate because that power was already vested in the executors and their successors under the terms of the will. The record fails to show whether or not the will was probated in Colorado. While it may be necessary to probate the will in the state where the land is situated in order to validate a deed conveying the property, such proceedings, if not already had, may be supplied after the date of conveyance, and will relate back and render it valid. 24 C. J. 1123; Dorsey v. Banks, 88 Iowa 595, 55 N. W. 574. In the Dorsey case we said (page 602) :

"In this case, as already stated, the formal conveyance was made September 4, 1889, but the will was not recorded in Sioux county, until November 25, 1889. This objection goes only to the trust estate, and not to the undivided estate of the defendant. While it might have authorized the purchaser to refuse the deed tendered, yet that was a personal right which he could waive. The defect in the proceedings did not necessarily defeat the sale."

While there was no evidence in the record showing that the administrator probated the will in Colorado, neither is there any evidence to show that the administrator failed to do so. The record shows that the Colorado lots were sold by the administrator, and it may be assumed that he took the necessary steps to convey a good title to the property sold.

Notwithstanding the defendant's contention, it is a fact that, whatever conveyance of the Colorado real estate was made by the administrator, it was made by him under the apparent authority of the will.

Under the doctrine of equitable conversion hereinabove referred to, the real estate so sold became and was personal property at the

time of decedent's death, and, when the property was converted into cash, the proceeds became part of the personal property of the estate; and, when such cash came into the hands of the administrator in the state of Iowa, it was received by him as personal property of the estate, and he and the surety on his bond became liable for a proper accounting thereof.

The conditions of the surety bond are as follows:

"The conditions of the above obligation are such that, whereas H. J. Cunningham, who has been appointed executor of the estate of said decedent, shall, as such, truly, faithfully ànd honestly discharge all the duties and perform all the trusts committed to him, and render to the District Court a just and true account of said administration whenever required by law *or by order of court,* and do all things now or hereafter required by law, then the above obligation to be void, otherwise to remain in full force and effect."

The undisputed record shows that the administrator Cunningham failed to comply with the order of court requiring him to pay over to the administrator *de bonis non* the sum of $748.64 adjudged and decreed to be due and owing the estate.

IV. A judgment on a final settlement in the probate court is conclusive as to the existence and amount of assets.

The generally accepted rule is that a judgment or decree against an executor or administrator is conclusive against the sureties on his bond, although they were not parties to the proceedings, and cannot be collaterally questioned by them in an action on the bond; their only remedy being by way of appeal, writ of error, or application for a new trial. 24 C. J. 1079, section 2589; Carpenter v. U. S. Fidelity & Guaranty Co., 123 Wis. 209, 101 N. W. 404; 24 C. J. 1080; Tucker v. Stewart, 147 Iowa 294, 126 N. W. 183; Chase v. Wright, 116 Iowa 555, 90 N. W. 357; In re Estate of Kessler, 213 Iowa 633, 239 N. W. 555; Nevitt v. Woodburn, 160 Ill. 203, 43 N. E. 385, 52 Am. St. Rep. 315; Pierce v. Maetzold, 126 Minn. 445, 148 N. W. 302.

The case of In re Kessler's Estate, 213 Iowa 633, 239 N. W. 555, was an action by an administrator with the will annexed against the executor for a shortage found due from the executor to the estate. The action was against the surety upon the bond. On the hearing of the final report in that case the court ordered the former

executor to pay the shortage into this court, for the benefit of the estate of W. A. Kessler. In that case the court said:

"Payment of the aforesaid amount was not made, and thereupon this summary action was brought against the defendants Moore, who are sureties upon the bond of Curtis. * * * The bondsmen were not necessary parties in the proceeding wherein the amount of Curtis' shortage was determined, and, in the absence of fraud or mistake, the adjudication of the amount by the court is binding upon them. See Tucker v. Stewart, 147 Iowa 294, 126 N. W. 183; In re Estate of Carpenter, 210 Iowa 553, 231 N. W. 376."

Under the terms of the will, the administrators not only had the right to sell the Colorado property, but it was their duty so to do in order to distribute the proceeds of the sale in accordance with the terms of the will. There is no dispute about the conveyance and sale of the Colorado property by the administrator with the will annexed. It must also be conceded that, having sold the property of the estate, the proceeds of the sale thereof did not belong to him personally, but must have belonged to the estate. The records show that such proceeds were paid to the administrator of the estate. As before stated, it may be assumed that in making the sale he took the necessary steps to enable him to pass a good title, and, if he omitted so to do, the will can still be probated in Colorado for the purpose of validating the conveyance made by him.

The lower court found in favor of plaintiff and against the defendant. We believe the judgment is correct, and the same is hereby affirmed.

CLAUSSEN, C. J., and ANDERSON, STEVENS, MITCHELL, and KINDIG, JJ., concur.