RUDOLPH PETERS, Administrator c. t. a., et al., Appellants, v. E. P. THONING et al., Appellees.

No. 45763.

756

February 10, 1942.

Harry B. Swan, Roscoe S. Jones, and Boyd M. Cambridge, for appellants.

Joe W. Turner and Bennett Cullison, for appellees.

Stiger, J.—Nicolaus Petersen died testate in January, 1918. The material portion of his will reads:

"Paragraph 2. I hereby will, devise and bequeath to my beloved wife, Margaretha Petersen, during the continuance of

her natural life time, the Southwest quarter of Section Twenty two (22) and the North west quarter of Section Twenty seven (27) all in Township seventy seven, Range Thirty eight, Pottawattamie County, Iowa, on her death or in case I survive her on my death it is my wish and desire that said land shall be sold and the proceeds divided equally among my six (6) children as hereinafter specified, in equal shares share and share alike.''

Another portion of the will designates the six children as Matt H. Petersen, Nick M. Petersen, Carl Petersen, Louise Oerman, nee Petersen, Agnes Stamp, nee Petersen, Wilhelmina Petersen.

The widow and all of the children survived the testator. Margaretha Petersen, the life tenant, was appointed as executrix of the estate which was closed in 1919.

In 1923, Matt Petersen, a son of decedent, was adjudged a bankrupt. He did not list an interest in the estate of his father in his property schedule. On January 7, 1924, the trustee in bankruptcy sold all of the interest of the bankrupt in the real estate described in paragraph 2 of the will to defendant, G. C. Wyland. The interest of the remaining defendants is apparently based on the trustee's deed to Mr. Wyland.

Matt Petersen died in 1937. He was survived by his three sons who are plaintiffs in this litigation. Margaretha Petersen, executrix and widow of the decedent, died in July 1938.

On August 15, 1939, an order reopening the estate was entered on the application of the assignee of the interest in the estate of Nick Petersen, a son of deceased, beneficiary under paragraph 2 of the will, stating that the life tenant was deceased and that to carry out the intent of the testator and comply with the terms of the will it was necessary that the estate be reopened and that an administrator c. t. a. be appointed to sell the real estate and divide the proceeds in harmony with paragraph 2 of the will. The order appointed the plaintiff herein, Rudolph Peters, administrator c. t. a. for the purpose of selling the real estate and dividing the proceeds among the beneficiaries.

Thereupon plaintiffs instituted this suit. The petition

alleged the will produced an equitable conversion of the real estate into personalty; that Matt Petersen acquired no interest in the real estate by the will; that the trustee's deed purporting to convey the interest of the bankrupt in the real estate to the grantee, Wyland, was of no force or effect as the bankrupt did not own any interest in the real estate and asked that the title to the real estate be quieted in the administrator for the purpose of sale under the provisions of the will and that the court decree that plaintiffs, who are heirs of Matt Petersen, will be entitled to one sixth of the proceeds of the sale when made by the administrator.

The answer alleged a reconversion of the property to real estate and that the purchaser from the trustee in bankruptcy acquired all of the interest of Matt Petersen acquired under the will whether it be denominated real or personal property.

The court found that the children received a vested remainder in the real estate or the proceeds from the sale thereof; that they elected at the time the estate was closed to treat the devise or bequest as realty, thus effecting a reconversion, and that whatsoever interest Matt Petersen had in and to the real estate under the will of decedent passed to and became the property of the trustee in bankruptcy.

I. Appellants' position on the question of conversion is substantially as follows:

The conversion from realty into personalty took place at the time of the death of the life tenant in 1938; that during the period of the life tenancy the title to the remainder was in the estate of Nicolaus Petersen; that not only the enjoyment of the gift of the remainder, but the gift itself, was postponed to the date of the death of the life tenant; that at the time of the adjudication of bankruptcy in 1923, the bankrupt had acquired no property of any kind under paragraph 2 and therefore there was no property belonging to the bankrupt in the jurisdiction of the bankruptcy court that was subject to a conveyance by the trustee; that Matt Petersen, son of decedent, never had any interest in the real estate.

We agree that Matt Petersen was not devised real estate by the will, but cannot agree with the proposition that he acquired

no interest of any nature under paragraph 2 of the will until the death of the life tenant in 1938. The will contained an express direction that the land be sold on the death of the life tenant and the proceeds be divided equally among his six children. We hold the will accomplished an equitable conversion of the remainder at the time of the death of testator, though the sale of the land was postponed to a time subsequent to his death, that is, the death of the life tenant; that the interest of the children acquired under the will was personal in character which gift vested in them at the death of the testator—its enjoyment being postponed for the sole purpose of letting in the life estate.

We think it is plain the testator did not intend to devise real estate to his children.

There is no merit to the suggestion in the record that the gift to the children was contingent. The beneficiaries of the remainder interest are definite and certain and they had a present right at the death of the testator to the enjoyment of the gift at a certain time in the future—the death of the life tenant.

In Beaver v. Ross, 140 Iowa 154, 118 N. W. 287, 20 L. R. A., N. S., 65, 17 Ann. Cas. 640, the will devised a life estate to testator's wife and provided that on her death the real estate be sold and after deducting $2,500 from the proceeds of the sale for a trust fund for one child the remaining proceeds were to be equally divided among the testator's children. The court said about the doctrine of conversion at page 158 of 140 Iowa, page 289 of 118 N. W.:

"It was quite generally held that there need be no devise in terms to testators, executors, or to trustees in order that the doctrine of equitable conversion may apply. * * * And the fact that the sale is postponed to a time subsequent to the death of the testator is not controlling. * * *

"Where there is a postponement of the sale to a time subsequent to testator's death, the courts are in conflict regarding the time when the conversion takes place; * * * The great weight of authority is in favor of the proposition that the conversion takes place at the instant of testator's death, and that all prop-

erty rights must be determined as if the conversion had taken place at that time, and the rights of the parties are adjusted as if the property were personalty. In cases where the doctrine applies either by reason of the act of the parties or by operation of law, the proceeds are regarded as personal property. In other words, this interest passes as personalty, and the legatees have no such estate in the land as is subject to a judgment or lien or to an execution for the sale of real estate.''

In 19 Am. Jur. 21, section 27, it is stated:

''Under wills.—Where land is directed by a testator to be sold at, within, or after a definite future time, it is to be regarded as converted into personalty as of the time of the testator's death, and all property rights must be determined as if actual conversion had taken place at such time. Thus, where a sale is directed to be made upon the death of the testator's widow or upon the arrival of children at a specified age or after or within a certain period, the property rights of the beneficiaries of the proceeds of sale will be regarded as existing in personalty, without regard to the remoteness of the time fixed for the actual conversion of the land by sale. * * * If, however, the direction in a will to sell land is based upon a contingency—such as, the request or consent of a certain person, or any other event—then conversion does not take place until actual sale or until the occurrence of the contingency.'' In the instant case the sale does not depend on any condition or contingency.

See also on this issue: In re Estate of Jackson, 217 Iowa 1046, 252 N. W. 775, 91 A. L. R. 937; Ihle v Ihle, 222 Iowa 1086, 270 N. W. 452; In re Estate of Schwertley, 228 Iowa 1209, 293 N. W. 445; Dever v. Turner, 200 Iowa 926, 205 N. W. 755; and see Hiller v. Herrick, 189 Iowa 668, 179 N. W. 113.

II. We cannot agree with the finding of the trial court and the contention of appellees that there was a reconversion to real property by agreement of all the beneficiaries of the remainder. It is well settled that *all* of the legatees may, before the power to sell is exercised, by some unequivocal act or declaration elect to take the land in lieu of the proceeds. Dever v.

Turner, 200 Iowa 926, 205 N. W. 755, supra; In re Estate of Warner, 209 Iowa 948, 229 N. W. 241.

The decision of the court that a reconversion was accomplished by an agreement of all the beneficiaries is based on a receipt referred to as a waiver, signed by all of the children at the time of the closing of the estate in 1919, and the fact the estate was closed prior to the time a sale was made.

The receipt signed by each of the children reads:

"363.02 Ex. B.                                   Sept. 15, 1919

"Received from Margaretha Petersen, exc., three hundred sixty three and 02/100 Dollars and my undivided one sixth share interest in George Geddes land contract now in the hands of Margaretha Petersen, agent. In full for my distributive share in personal estate of Nicolaus Petersen, deceased."

The order closing the estate contains the following language:

"That all assets of the estate have been collected * * * that distribution of this estate has been made * * * *And that nothing further remains to be done herein,* and said final report is approved and the executrix stands discharged."

The receipt refers to specific personal property, the amount of $363.02 being cash received from executrix on the closing of the estate. It contains no reference to the real estate and cannot be construed as referring to the provisions of paragraph 2 of the will.

We are of the opinion the statement in the order closing the estate "that distribution of this estate has been made" refers only to the specific cash and other personal property described in the receipt.

The phrase in the order "nothing further remains to be done herein" cannot be construed as a finding that the beneficiaries had unequivocally elected to make a reconversion. It was the report of the executrix that was being approved and it is true that she had performed all of her duties as executrix and that nothing remained to be done by her. All of the beneficiaries knew that the duty to sell the real estate under the will did not

rest on the executrix as it was not to be sold until after her death.

Mrs. Petersen lived 19 years after her discharge. She had a life estate in the real property and had distributed all the personal property prior to her discharge. It must have been apparent to all concerned in the estate that an administrator c. t. a. would have to be appointed after the death of the life tenant to carry out the terms of the will. No purpose would have been served in keeping the estate open during the life of the life tenant.

The signing of the receipt and closing the estate are consistent with an intention of the beneficiaries to have the land sold after the death of the life tenant pursuant to the terms of paragraph 2.

Each child of decedent had a right to have a one-sixth interest in the proceeds of the sale under the will. None of the children are parties to this suit. Agnes Stamp, a daughter of decedent, testified for plaintiffs on the question of a reconversion. She purports to state what the "understanding" of all the children was about the real estate. Her testimony on cross-examination is not in harmony with her direct examination. Assuming her testimony would bind the other children we think it supports plaintiffs' contention that there was no unequivocal act, agreement or declaration by all of the children that would amount to an election to reconvert. Her final statement on *cross-examination* about the "understanding" was: "It was to be sold and the money divided. That was in my father's will you see, after her death."

III. We agree with appellees' contention and the view of the trial court that whatever interest the bankrupt acquired under the will, whether it be personalty or realty, passed by the trustee's deed and we have held herein that the nature of that interest is personal property which gift vested at the testator's death.

The adjudication of bankruptcy vested title to all of the property of the bankrupt acquired under the will in the trustee.

In holding that the interest of a bankrupt as a real estate

remainderman, whether the interest be contingent or vested, passes to the trustee in bankruptcy, this court, in Noonan v. State Bank of Livermore, 211 Iowa 401, 402, 233 N. W. 487, 488, speaking through Mr. Justice Albert, said:

"In 1 Federal Statutes Annotated (2d Ed.) 1150, it is said that a trustee in bankruptcy is vested by operation of law with the title of the bankrupt in (Subdivision 5, page 1171) property which, prior to the filing of the petition, he could by any means have transferred, or which might have been levied upon and sold under judicial process against him."

It is clear that Matt Petersen could have transferred the property rights acquired by the will.

The application of the trustee in bankruptcy for authority to sell stated that the one-sixth interest of the bankrupt in the real estate was subject to a life estate and was acquired by virtue of the will of his father, Nicolaus Petersen. This interest was, under paragraph 2, in the nature of either personalty or realty, its legal character depending upon a proper construction of the will. But whatever the nature of the interest, it passed to the trustee in bankruptcy. The order of the referee directed a sale of all the interest of the bankrupt in the real estate. As often stated, equitable conversion is a constructive alteration in the nature of property, an equitable fiction devised to execute the intention of the testator, and we hold the words in the conveyance clause of the deed "all of the right, title and interest of the bankrupt in and to the real estate" must be construed as conveying all of the interest of the bankrupt, whether it was real or personal property.

The trustee only acquired the property rights conveyed to the bankrupt by the will which was the right to have the property sold on the death of the life tenant and to receive one sixth of the proceeds. It follows that the deed conveyed and the grantee received only a right to the proceeds when sold by the administrator.

The plaintiffs, who are heirs of the bankrupt, will, when

the land is sold, have no right to one sixth of the proceeds as against the defendants.

That part of the decree holding that there was a reconversion, that the plaintiff administrator was without power under the will to sell the real estate, and that the trustee's deed conveyed a one-sixth interest in the real estate to the grantee and dismissing the petition as to the administrator is reversed; that part of the decree dismissing the petition as to the plaintiffs who are heirs of Matt Petersen is affirmed.

Reversed in part and affirmed in part and remanded for a decree in harmony with this opinion.

BLISS, C. J., and GARFIELD, MILLER, HALE, SAGER, and WENNERSTRUM, JJ., concur.

OLIVER, J., dissents from Division III.

OLIVER, J. (dissenting)—I respectfully dissent from Division III of the majority opinion. The ultimate findings of the trial court, so far as here material, were (a) that the widow and children had reconverted the gift into real estate, and (b) that the trustee in bankruptcy thereafter sold and conveyed "the 1/6 interest of Matt H. Petersen in and to the real property." Division III of the majority opinion is founded upon its finding in Division II that the widow and children had not reconverted the gift into real estate. Therefore, the case must be considered upon that basis.

Because my conception of the fundamentals of the doctrine of conversion appears to be at variance with the views expressed in the majority opinion, some phases of that doctrine will be first considered. The majority opinion states that conversion is only "an equitable fiction devised to execute the intention of the testator * * * ." Conceding the correctness of this statement as an abstract proposition, it should not be interpreted as minimizing the effect of conversion, or changing or limiting the resulting status. As recognized by the majority opinion and as hereinafter noted, it is well established that the conversion of realty into money gives it the status of money as concerns the rights of certain classes of creditors of the persons entitled thereto.

Perhaps it will aid in simplifying the proposition, if it be remembered that had the real estate been sold under contract for deed by the testator during his lifetime, a conversion would have been effected. The resulting status would have been the same as though the testator had ordered it sold after his death.

In Ingraham v. Chandler, 179 Iowa 304, 306, 308, 161 N. W. 434, 435, L. R. A. 1917D, 713, we said, in discussing the doctrine of equitable conversion:

" * * * Its real purpose is to give effect to the manifest intent of a testator or vendor, and to treat that as done which by will the testator has directed to be done, or that which, by previous contract with another, both have mutually bound themselves to do. * * * Taking the typical case of equitable conversion by contract, as above stated, we are fully committed to the doctrine that such a contract works an equitable conversion; that, in case of the death of the vendor, his interest in the contract would pass as personalty; * * *."

In Shillinglaw v. Peterson, 184 Iowa 276, 287, 167 N. W. 709, 713, we said:

"In other words, the interest passes as personalty, and the legatees have no estate in the land as such."

In re Estate of Miller, 142 Iowa 563, 119 N. W. 977, holds that a devisee of certain land which testatrix had previously sold under contract received nothing by said devise and that the interest of testatrix in the contract passed to certain residuary legatees as personal property. If it be constantly kept in view that the status of that which was to pass to Matt Petersen was the same as though his father had sold the realty under contract and had willed Matt an interest in the proceeds, the solution of the question before us will be greatly aided.

The majority opinion holds that upon Matt Petersen's bankruptcy all his property and assets, including his interest in the estate of his deceased father, passed to his trustee in bankruptcy. With that holding I am in full agreement. But what passed *to* said trustee in bankruptcy must not be confused with what passed *from* said trustee under the deed to

the real estate. The bankrupt had no interest in the real estate as such, his interest being the same as though he had been willed a share in a contract to sell the real estate. Therefore, the trustee's deed conveyed no interest in the real estate.

As we said in Beaver v. Ross, 140 Iowa 154, 159, 118 N. W. 287, 289, 20 L. R. A., N. S., 65, 17 Ann. Cas. 640, quoted in the majority opinion:

"In other words, this interest passes as personalty, and the legatees have no such estate in the land as is subject to a judgment or lien or to an execution for the sale of real estate."

To the same effect are Dever v. Turner, 200 Iowa 926, 205 N. W. 755; Krob v. Rothrock, (Iowa), 119 N. W. 131, and other cases. No good reason appears why, in such situation, the rights of the grantee in a deed from a trustee in bankruptcy should be any greater than the rights of a grantee in a sheriff's deed under sale upon general execution. Reference has already been made herein to In re Estate of Miller as holding that nothing passed by a devise of realty which had been equitably converted into money by sale contract.

This same doctrine is enunciated in Chick v. Ives, 2 Neb. (Unofficial) 879, 889, 90 N. W. 751, 754. In that case Emma L. Ives gave plaintiff a mortgage conveying whatever right, title and interest she had in the undivided one seventh of two thirds of her father's real estate, describing it. The court said:

"It follows that the heirs have no interest in the real estate as such; that it cannot be seized on attachment by their creditors, nor is a judgment against them a lien thereon. Bank v. Paulsen, supra [57 Neb. 717, 78 N. W. 303]. We further hold that the defendant Emma L. Ives had no power to sell, convey, or mortgage her share of the estate, as real estate. It follows that the mortgage * * * created no lien upon the real estate described therein or any part thereof. In other words, the plaintiff took no interest in the real estate by his mortgage."

To reiterate, Matt Petersen had no interest in the real estate *as such* which would pass by a conveyance of said real estate.

But the majority opinion is based in part upon the theory that the trustee's deed in this instance conveyed or purported to convey more than the land itself. I do not think the record fairly susceptible to any such construction.

The application of the trustee was for authority to sell an undivided one-sixth interest in said 320 acres, subject to the life estate of the widow. The order of the referee recited that Petersen owned said one-sixth interest and directed the trustee to sell all of the right, title and interest of said bankrupt in and to said real estate. The notice of the sale referred to the bankrupt's undivided one-sixth interest in and to said real estate, and the appraisers appraised a one-sixth interest in said real estate.

The trustee's deed recited that the trustee was authorized "to sell the real estate hereinafter described" and described it as "all the right, title and interest of bankrupt in and to" SW¼, etc., and all his right, title and interest in and to NW¼, etc., "subject to the life estate of Margaretha Petersen under and by the virtue of the will of Nicolaus Petersen, conveying all of the right, title and interest of every kind and nature belonging to the said bankrupt * * * free and clear of all * * * encumbrances except the life estate above referred to." I think this deed covered an interest in the land *as such* only and that because the bankrupt did not own a share of the land itself, as distinguished from a right to a share in its proceeds when sold, no title or interest passed under the deed of the trustee. If this land be considered as though it had been sold under contract by the testator, it becomes obvious that the interest of one to whom a share in the contract had been willed could not be affected by the deed of his trustee in bankruptcy to the land itself.

However, the majority opinion relies upon certain language in the trustee's deed to wit: "all the right, title and interest of the bankrupt in and to the real estate." There is no magic in the words "all the right, title and interest." Their meaning is well settled. They do not enlarge the estate conveyed. On the contrary, their tendency is restrictive. Trustee's deeds should properly contain such language. See unofficial form

200 of trustee's deed, 9 Remington on Bankruptcy, 5th Ed., 202. It would seem this is because the right of the trustee to convey is limited to the right or interest of the bankrupt in the particular property. See 7 C. J. 230; 8 C. J. S. 1037.

Right, title and interest, as used in a deed conveying the grantor's right, title and interest, have been held to be words of release and quitclaim merely. Gibson v. Chouteau, 39 Mo. 536, 75 U. S. 314, 19 L. Ed. 317; Lombardi v. Sinanides, 71 Cal. App. 272, 235 P. 455, 456; Baker v. Davie, 211 Mass. 429, 97 N. E. 1094, 1097, 37 L. R. A., N. S., 944, holds that the words "right, title and interest" as used in deeds, have acquired a definite meaning, not importing ownership, but conveying whatever title the grantor has and that alone. And the holding in Chick v. Ives, supra, in which the mortgage employed such language, was that it created no lien upon the converted real estate.

In Scofield v. Moore, 31 Iowa 241, 244, which involved the transfer of a judgment, this court interpreted the language as follows, "we do not propose to sell you *the judgment,* we only offer to transfer to you *all our right, title and interest in it,* whatever that may be." From authorities cited in Volume 37 of Words and Phrases, permanent edition, at page 682 et seq., this appears to be the general rule.

The majority opinion states "and we hold the words in the conveyance clause of the deed 'all of the right, title and interest of the bankrupt in and to the real estate', must be construed as conveying all of the interest of the bankrupt, whether it was real or personal property." Obviously, this holding does not accord with the authorities above cited.

From the foregoing I think it necessarily follows that the bankrupt's interest in the sale price of the land did not pass under the trustee's deed to the real estate. Therefore, the grantee therein and the defendants as his successors in interest acquired no right to the fund. The right to the bankrupt's share in the fund then remained in the trustee in bankruptcy. The trustee's deed was made in 1924, the bankrupt was discharged in 1930, and this suit was instituted after the lapse of so many years that it may be assumed the trustee had long since

been discharged. This share of the bankrupt in the money from the sale of the land was not a concealed asset. True, the bankrupt did not list it in his original schedules. Perhaps this was because the bankrupt contended, as his heirs have contended in this case, that his interest in the sale price of the land was contingent only, and, therefore, was not subject to the claims of his creditors. In any event, the trustee learned of the asset through the party who was subsequently the grantee in the trustee's deed and who prior to securing said deed had investigated the records of the estate of the bankrupt's father. Thus, we are not here faced with the question of a concealed asset.

However, it was clearly an asset upon which the trustee in bankruptcy failed to administer. Stipe v. Jefferson, 192 Minn. 504, 257 N. W. 99, 111 A. L. R. 831, was an action involving real estate brought by a plaintiff who, without fraud, had failed to schedule the same and was thereafter discharged without the property being disposed of by the trustee in bankruptcy. In sustaining plaintiff's right to prevail the court, after discussing the applicable bankruptcy statutes and various authorities, said, at page 508 of 192 Minn, page 101 of 257 N. W.: "So, if it is not otherwise disposed of, it must necessarily revert to the bankrupt as the original owner from whom in the first instance the trustee got title. Clearly, one person cannot lose title without another getting it. See 50 C. J. 783 (§60)."

There is other authority that, at least in the absence of fraud, a bankrupt owner of property not taken over or administered by the trustee, has, after his discharge, sufficient title thereto to recover the same from third persons. 8 C. J. S. 1596 et seq. Blotcky v. Silberman, 225 Iowa 519, 281 N. W. 496, though not directly in point, bears upon this proposition. And see Bank v. Maxson, 168 Iowa 318, 150 N. W. 601.

Under the circumstances of the case at bar I think the bankrupt's interest in the fund reverted to him at least sufficiently to entitle his heirs to prevail as against those claiming the fund under the trustee's deed to the realty. Whether or not said heirs could prevail against a successor trustee in bankruptcy, were one to be appointed, is not before us and need not be considered.