Peoples National Bank, Independence, Iowa, Appellant, v.
Ethel Maxson et al., Appellees.

**HOMESTEAD:  Shifting of Title—Continued Possession—Pre-exist-**
1  **ing Debt.**  The continuity of a homestead is not interrupted, no
new homestead is created, by the shifting of title, legal or
equitable, from one spouse to another—the homestead being for
the conservation of the family home.  (Secs. 2972, 2974, Code.)

PRINCIPLE APPLIED: . A homestead had continued for some
eleven years with legal title in the husband.  Being involved in
debt, the husband conveyed and the grantee as part of same
transaction gave to the wife of grantor a contract to reconvey
to the wife on performance of certain financial conditions.  This
contract to the wife was the only consideration for the con-
veyance.  Later, judgment was rendered against both the hus-
band and wife, for a debt postdating original homestead occu-
pancy and antedating the conveyance by the husband and the
contract by grantee back to wife.  The possession of the premises
by the husband and wife continued as of old.  *Held,* no new home-
stead was created and the judgment never became a lien.

**BANKRUPTCY:  Judgments Annulled—Exempt and Non-Exempt**
2  **Property.**  All judgments against a bankrupt debtor rendered
within four months of the filing of a petition in bankruptcy are
absolutely annulled by the filing of said petition (if the debtor
is adjudged a bankrupt), both as to exempt and non-exempt
property.  (U. S. Comp. St. 9651.)

**BANKRUPTCY:  Unchallenged Acts of Trustee—Creditors Pre-**
3  **cluded.**  Creditors of a debtor applying for a discharge in bank-
ruptcy are absolutely bound and precluded by the unchallenged
acts of the trustee.

PRINCIPLE APPLIED:  Prior to the filing of a petition in
bankruptcy the debtor had received a contract under which she
would be entitled to receive a conveyance of land upon making
specified payments.  Upon filing her petition she scheduled this
contract as one of her assets.  The trustee evidently did not
consider the contract of attractive value, and ignored it.  No
creditor complained to the bankruptcy court.  The estate was
closed and trustee discharged.  The discharged debtor started

afresh, proceeded under the contract spurned by the trustee, made valuable improvements on the premises and it became valuable. *Held*, creditors were precluded by the action of the trustee and had no enforceable right against the property.

**BANKRUPTCY: Debts Provable—Judgments.** A judgment is provable in bankruptcy and a discharge cancels the debt.

**BANKRUPTCY: Estoppel—Laches—Subjecting Land to Judgment.** Equity will not lend its aid to a creditor whose judgment was scheduled in a bankruptcy proceeding, who stood by and permitted the trustee to ignore what then appeared to be a valueless asset, tendered by the debtor to the trustee, and who, years after the discharged debtor by toil and improvement had made the asset valuable and sold the same to an innocent party, seeks to revive his old, discredited and annulled judgment against said asset.

*Appeal from Buchanan District Court.*—HON. G. W. DUNHAM, Judge.

TUESDAY, JANUARY 12, 1915.

ACTION in equity by the holder of a judgment obtained prior to bankruptcy of debtors, who were husband and wife, to have the judgment decreed to be a lien upon the homestead, also upon the eighty acres outside the homestead. From a decree for the defendants, plaintiff appeals.—*Affirmed*.

*Cook & Cook,* for appellant.

*Hasner & Hasner,* for appellees.

PRESTON, J.—I. The stipulation, or agreed statement of facts, made at the trial states the case as concisely as it could be stated. It is as follows:

It is admitted that on May 13th, 1896, Sarah P. Maxson and husband deeded to Blanche Bennett and Larnard Maxson the premises described in Exhibit "A," attached to plaintiff's petition.

That Blanche Bennett and Larnard Maxson were brother and sister.

That on May 13th, 1896, Larnard Maxson went into possession of said premises; that he was a married man, and continued to live on said premises from May 13th, 1896, until the present time.

That on March 28th, 1901, Larnard Maxson purchased from Blanche Bennett and her husband her undivided one-half interest in said land, and thereafter was the owner of the whole of said land until the same was conveyed, as hereafter appears in this admission.

That on November 2nd, 1907, Larnard Maxson and wife executed a warranty deed to C. W. Van Orsdol of the premises described in Exhibit "A" attached to plaintiff's petition.

That the only consideration mentioned for said deed was that C. W. Van Orsdol was to pay off and discharge certain mortgages and judgments that were against said premises, two of the mortgages having been foreclosed at the time, and execution issued thereon.

That on the same date, to wit, November 2nd, 1907, that the deed from Larnard Maxson and wife was made to C. W. Van Orsdol, C. W. Van Orsdol gave back a contract to Ethel Maxson, the wife of Larnard Maxson, a copy of which contract is attached to plaintiff's petition and marked Exhibit "A."

That the said Larnard Maxson and wife Ethel remained in the possession of said premises, and continued to farm the land as before, and have remained thereon until this date, and are now in possession of said land.

That on March 26th, 1908, Ethel Maxson and Larnard Maxson filed their voluntary petition in the United States District Court of the Northern District of Iowa, to be adjudged bankrupts, and they were each of them adjudged bankrupts on the 26th day of March, 1908.

That in the petitions of bankruptcy the Peoples National Bank, the plaintiff in this case, was scheduled as a creditor holding a judgment in the District Court of Buchanan County, Iowa, being the judgment that the plaintiff is seek-

ing to enforce in this case, and referred to in paragraph 2 of the plaintiff's petition.

That the said Ethel Maxson also scheduled as an asset belonging to her estate the contract held by her from C. W. Van Orsdol, being the contract a copy of which is attached to plaintiff's petition and marked Exhibit "A."

That thereafter, at a meeting of the creditors duly called by the referee, M. W. Harmon, C. M. Roberts, who was at the time cashier of the Peoples National Bank, was elected trustee of the estates of Ethel Maxson and Larnard Maxson.

That the said C. M. Roberts as trustee at no time filed in the office of the recorder of deeds of Buchanan County a certified copy of the decree of adjudication of the bankruptcy of either Ethel or Larnard Maxson.

That the said C. M. Roberts as trustee of Ethel and Larnard Maxson set apart upon the petition of the said Larnard Maxson and Ethel Maxson, as a homestead in said premises the property described in paragraph 6 of the plaintiff's petition.

That the said C. M. Roberts as said trustee, closed up said estate, made his final report, and was discharged as trustee in both estates.

That Ethel Maxson was discharged September 19th, 1908, and her husband on the third day of April, A. D. 1911, from all debts and claims which are made provable by the Acts of Congress against their estates, and which existed on the 26th day of March, A. D. 1908, upon which day the petition for adjudication was filed by them, excepting such debts as are by law excepted from the operation of a discharge in bankruptcy, as appears from the certified copy of the discharge in bankruptcy given by Lee McNeely, Clerk of the United States District Court, witnessed and certified on the 2nd day of May, 1913, and which is hereby introduced in evidence, and it is agreed that the discharge granted to Ethel Maxson is in all respects the same, and in the same words and figures

as is the discharge of Larnard Maxson, which is herewith introduced in evidence.

That since the adjudication in bankruptcy Ethel Maxson has made permanent improvements upon the premises described in plaintiff's petition of the value of $1,292.95, all of which are on the homestead forty, except the following items:

$86.40 for woven wire fence, 700 posts, $92.50, 700 pounds of barbed wire, $22.75, all of said improvements being in the nature and kind as shown in defendant's Exhibit "B," which is introduced in evidence.

That on January 7th, 1913, Ethel Maxson and her husband assigned to the Northern Iowa Land Company all their right, title, and interest in and to the contract existing between said Ethel Maxson and C. W. Van Orsdol, a copy of which contract is attached to plaintiff's petition and marked Exhibit "A."

That thereupon the said Northern Iowa Land Company tendered to C. W. Van Orsdol and demanded a deed from him to said premises, and that there was found due at said time and paid over to the said C. W. Van Orsdol a sum of money that was between seventy-six hundred and seventy-seven hundred dollars, and that thereupon the said C. W. Van Orsdol executed a deed to the said Northern Iowa Land Company for said premises, and the Northern Iowa Land Company is at present the owner of said premises.

That the indebtedness on which the plaintiff's judgment referred to in paragraph 2 of the petition was based arose prior to November 2nd, 1907, namely June 8th, 1907.

That C. M. Roberts as trustee of the estate of Ethel Maxson, bankrupt, made no transfer of the premises described in Exhibit "A," except that he set apart to the bankrupt as her homestead the premises set forth in paragraph 6 of the petition.

That the plaintiff's judgment was obtained in the usual manner of a suit at law, and the notice regularly served.

The one witness in the case, H. T. Lynch, testified that

he was President of the Northern Iowa Land Company; that the encumbrance on the South Dakota land his company traded to the Maxsons was $5,300.00; that he, for the land company, paid Van Orsdol the amount due and received a deed for the land. That in 1908, 1909 and 1910, this eighty acres was worth from $70 to $75 per acre; that the land company traded one hundred and sixty acres of land in South Dakota, and in the trade the valuations were $75 an acre on the South Dakota land and $135 an acre for the Buchanan County farm; that Mr. Maxson was charged with the equity in the South Dakota land, and his company bought the Maxson land at $135 an acre, the Van Orsdol encumbrance was paid off, and the balance was going to Mrs. Maxson; that the cash value of the Maxson premises at the time of the trade was $110 per acre for the one hundred and twenty acres, and for the homestead forty, $125 an acre.

The contract between Van Orsdol and Mrs. Maxson is, in substance, that Van Orsdol agrees to sell the land to Mrs. Maxson on the performance of the agreements by her to be performed, for $5,615.44, payable in different amounts and at different times from November 2, 1908, to November 2, 1912, with interest, which was the amount due on a mortgage on the land; when all but $3,500.00 had been paid, and if the other payments had been made as agreed on November 2, 1912, Van Orsdol agreed to convey to her and receive back a mortgage for $3,500.00. She was to have possession of the premises from and after the execution of the contract. If she sold the premises within five years, Van Orsdol agreed to accept from her all sums of money due him by virtue of the contract. She was to pay the taxes. Time was made the essence of the contract. If she made default in any of the payments or agreements, the contract was to be void, and Mrs. Maxson was to forfeit all her rights, but if all sums of money were paid according to the agreement, Van Orsdol was to execute a deed. Plaintiff obtained judgment against the Maxsons March 6, 1908, on an indebtedness contracted June 8, 1907.

As to the forty acres claimed as a homestead, it is contended by appellant that the deed by Maxson and wife to Van Orsdol was absolute, that it conveyed all interest of both

1. HOMESTEAD: shifting of title: continued possession: preexisting debt.

Maxson and his wife in the homestead forty, as well as in the other eighty acres, to Van Orsdol; that it was no mortgage, and that the homestead obtained by the wife under the contract, while enjoyed by both the wife and her spouse, is, in contemplation of the law, a new homestead, distinct from that enjoyed by them before they deeded their homestead rights to Van Orsdol, and hence, that the lien of the judgment of the plaintiff attaches to this homestead as a judgment antedating the acquisition of the homestead; that the fact that Van Orsdol gave them a new right in the land by a different sort of an instrument, giving the title to the wife where it was in her husband, cannot exempt them from the operation of the Iowa law subjecting a homestead to liability for debts created prior to its acquisition. It is conceded by appellant that if it was the claim of defendants that the deed to Van Orsdol and the contract back was all one transaction, and that the parties intended to make the deed to Van Orsdol a mortgage, and that it was a mortgage, the contention of defendants might be good.

Appellant cites Code Sec. 3801 and *Blain v. Stewart,* 2 Iowa 378, which, as they say, subjects both legal and equitable estates in real property to the lien of judgments, and Code Sec. 2976, which subjects the homestead to debts antedating the purchase of the homestead. They also cite Secs. 70 and 6 of the Bankruptcy Act, providing, as they claim, for setting aside the homestead of the bankrupt and leaving the liability of the homestead to the debts of the bankrupt, to be decided by the state laws and by the state courts.

Defendants contend that the deed from Maxson and wife of November 2, 1907, conveying the title from Maxson to Van Orsdol, and the contract between Mrs. Maxson and Van Orsdol was one transaction, and that no new homestead was

acquired by reason thereof; that the change of the title from the husband to the wife in this case, through Van Orsdol, all occurred at one transaction, and possession of the property being retained by contract, the homestead right was never extinguished, and that there was no time at which the rights of the creditors on contracts made before the second day of November, 1907, could intervene and claim a right prior to the homestead right that Mrs. Maxson continued to hold in this property. That the Iowa statute expressly provides that the homestead is for the benefit of the family, and that it would make no difference whether the title was continued in her husband, or whether it was changed to Mrs. Maxson. The deed and contract were executed at the same time, and we think constituted but one transaction. There was no consideration for the execution of the deed, other than the contract on the part of Van Orsdol to convey back to Mrs. Maxson the land when the sum of money named in the contract was paid to Van Orsdol. It seems the trustee was required by the court to set apart to the Maxsons the homestead as exempt. Some of the questions now argued are discussed by the court in that case. *In re Maxson*, 170 Fed. 356. If the prior homestead right continued, then plaintiff's judgment was not a lien thereon. *Thomas v. McDonald*, 102 Iowa 564, 568.

Sec. 6 of the Laws of Bankruptcy provides that the laws of the state shall govern in questions of exemptions.

Sec. 2972 of the Code of Iowa reads as follows: "The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary."

Sec. 2974 of the Code of Iowa reads as follows: "No conveyance or incumbrance of or contract to convey or incumber the homestead, if the owner is married, is valid, unless the husband and wife join in the execution of the same joint instrument, whether the homestead is exclusively the subject of the contract or not, but such contract may be en-

forced as to real estate other than the homestead at the option of the purchaser or incumbrancer.''

Sec. 70 of the Laws of Bankruptcy provides that the trustee shall be vested by operation of law with the title of the bankrupt, ''except in so far as it is property which is exempt.''

The exemption laws are to be liberally construed to accomplish the purpose of exemption.

The question then comes back to, what are the rights of the Maxsons under the Iowa law as to the homestead? In the case of *Green v. Farrar*, 53 Iowa 426, it was held that the conveyance of the homestead by a husband to his wife does not render it liable for the debts of the wife contracted prior to such conveyance, the exemption being for the benefit of the family. The homestead character, which it properly possessed while owned by the husband, is not divested by such transfer. And the supreme court in that case used this argument, as found on page 430: ''The parties might have sold this homestead, and with the proceeds acquired a new one in the name of the wife, which to the extent of the value of the old homestead would have been exempt in all cases in which the old homestead would have been exempt.''

In *White v. Kinley*, 92 Iowa 598, the case was this: John D. White owned a farm in Delaware county, which had constituted his homestead. This farm was sold and soon thereafter a house and lot in Marion, Iowa, was purchased with the proceeds of the Delaware county farm. Judgments against the wife antedating the time she acquired the homestead in Marion were sought to be satisfied by levying upon that property. It was held that the Marion property taken in the name of the wife was exempt from judgments against her existing prior to her becoming possessed of the title to said property.

And *Foster v. Rice*, 126 Iowa 190, was a case where one Rice, the owner of a homestead, with his wife, mortgaged the same. The mortgage was foreclosed, and it was sold in

satisfaction of the mortgage. A certificate of sale became the property of one Bailey. Bailey, after he became the owner of the certificate of sale, entered into an agreement with John Rice, by which he agreed to convey the premises to Rice by warranty deed upon the payment of certain consideration, and subsequently a sheriff's deed was executed to Bailey, the holder of the certificate. John R. Rice and his wife remained in possession of the premises all the time. The claim of the appellant in that case was that the sheriff's deed to Bailey extinguished the homestead rights of the Rices, and their occupancy from that time on, under the contract with Bailey, was under a new homestead right which originated after the indebtedness to plaintiff and was subject thereto. But the court said the facts as established did not warrant any such conclusion. It was held that the conveyance to Bailey, through the sheriff's deed, was, in effect, a mortgage of the property by Rice to Bailey. That Rice never lost the equitable title to the property and continued to hold it as his homestead, not by reason of any title acquired from Bailey under the contract to convey, but in continuation of his previous homestead right. And the court said a homestead right may exist as to property held by an equitable title as effectually as though it was held by legal title.

In *McClure v. Braniff*, 75 Iowa 38, it was held that a deed of a homestead, designed only to secure a loan from the grantee, the grantors continuing in possession, does not divest the grantors of their homestead rights.

We think the transaction of November 2, 1907, between the Maxsons and Van Orsdol, was in the nature of, or in effect, a mortgage on the premises to Van Orsdol to secure him for advance of the money to pay off the incumbrances upon the land. The Maxsons remained in possession of the land all the time, and the contract provided they might do so. Further, the transaction was not different than it would have been if Maxson had deeded the premises on November 2, 1907, directly to his wife. The effect of the transaction was to

transfer the legal title to Van Orsdol, and in consideration therefor he might as a part of the same transaction transfer the equitable title to Mrs. Maxson. It has been held that creditors cannot complain of the conveyance by the husband of the homestead to his wife, unless they show that the homestead was subject to sale for the satisfaction of their demands. *Payne v. Wilson*, 76 Iowa 377. And in *Beyer v. Thoeming*, 81 Iowa 517, the court again said that the conveyance of the homestead by the husband to his wife will not start a new homestead right in the wife, and it still will remain free from debts that could not be enforced against it prior to such conveyance. See also as bearing upon this point: *Green v. Farrar*, 53 Iowa 426, 429; *White v. Kinley*, 92 Iowa 598; *Foster v. Rice*, 126 Iowa 190; *McClure v. Braniff*, 75 Iowa 38.

We are of opinion that the homestead right continued for the benefit of this family, notwithstanding the conveyance made November 2, 1907. This being so, it is, perhaps, unneces-

2. BANKRUPTCY: judgments annulled: exempt and nonexempt property.

sary to refer to the bankruptcy statute as it affects the homestead in question. It may not be out of place, however, to refer to the matter briefly as a further reason why plaintiff's contention is not sound. Plaintiff's judgment and alleged lien was obtained twenty days before the Maxsons were adjudged bankrupts. Sec. 67-f of the Bankruptcy Statute provides that all judgment liens that attach to property at any time within four months from the time of the filing of the petition in bankruptcy become void as to the property. The statute will be set out in full later in the opinion.

There is a conflict between Secs. 67-c and 67-f of the Bankruptcy Act, and a conflict in the decisions as to their construction, and whether Sec. 67-f applies to judgment liens. Some of the cases are cited by appellant. The matter reached the Supreme Court of the United States, and in *C. B. & Q. R. R. Co. v. Hall*, 229 U. S. 511, 512, 57 L. Ed. 1306, the Supreme Court, referring to the decision *In re Forbes*, 186 Fed. 79, says: "That that case holds that Sec. 67-f annuls all liens, both as against the property which the trustee takes,

and that which goes to the bankrupt as exempt." The court then continues: "This view we think is supported both by the language of the section and the general policy of the Act, which was intended not only to secure equality among creditors, but for the benefit of the debtor in discharging him from his liabilities, and enabling him to start afresh with the property set apart to him as exempt. Both of these objects would be defeated, if judgments like this present were not annulled, for otherwise the two Iowa plaintiffs would not only obtain preference over other creditors, but would take the property which it was the purpose of the Bankruptcy Act to secure to the debtor." The court further continues by saying: "All liens obtained by legal proceedings within that period are declared null and void. That universal language is not restricted by the later provision that the property affected by the lien shall be released from the same, and pass to the trustee as a part of the estate of the bankrupt."

We ought to follow the holding of the Supreme Court on this question. Under that holding, the lien of the judgment of the plaintiff, as it was obtained only twenty days before the filing of the petition in bankruptcy, was annulled. By the deed and contract, there was nothing done in fraud of any right possessed by plaintiff at the date the deed to Van Orsdol was made.

As bearing upon the question of the contradiction and conflict in the different provisions of the Bankruptcy Act and the conflict in the decisions, the following citations may be given, which we do without further discussion: 5 Cyc. 365-369, 401-403; 3 R. C. L. 290-294.

II. As to the eighty acres of land outside the homestead, appellant contends that the bankrupts, the Maxsons, cannot claim the benefit of Sec. 67-f of the Bankruptcy Act so as to make void the judgment of plaintiff which had become a lien upon the eighty acres prior to the bankruptcy; that the purpose of the Bankruptcy Act, under Sec. 67-f, was to allow the trustee to claim the benefit of Sec. 67-f if he desired; that

3. BANKRUPTCY: unchallenged acts of trustee: creditors precluded.

in this case the trustee set aside the homestead, asserted no right to the eighty acres, and was discharged without giving any deed to the eighty acres; that plaintiff bank relies upon the lien of this judgment upon the eighty acres. They say that Sec. 67-f does not avoid levies, liens, etc., against all the world, but only against the trustee in bankruptcy, citing cases, which, as before stated, have been reviewed by the Supreme Court of the United States in the *Hall* case; that Sec. 67-f confers rights only upon the trustee, not upon the bankrupt, and that only the trustee or those holding under him can claim the benefit of the section. The argument is that the purpose of Sec. 67-f of the Bankruptcy Act is to vest in the trustee the property of the bankrupt, and, had the trustee claimed the property, his rights would prevail as against the lien of the judgment of the plaintiff under that section; that the trustee did not choose to assert title to the remaining eighty acres and was discharged by the Bankruptcy Court on closing of the bankrupt estate. It is admitted by appellees that on and before March 26, 1908, the date of the filing of the petition in bankruptcy, plaintiff's judgment was a lien on the eighty acres, but that, because the judgment and lien was within four months, the lien was void or annulled.

Section 67-f of the Bankruptcy Act, in so far as it applies to the instant case, provides: "That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien, shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien, shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid."

Some of the discussion of the Bankruptcy Act in the first paragraph of the opinion is applicable here. Under the decisions, plaintiff's judgment lien ceased to be a lien on the land because the Maxsons were adjudged bankrupts within four months from the time of the rendition of the judgment. *C. B. & Q. R. R. Co. v. Hall, supra; In re Forbes,* 26 A. B. R. 355; *In re Tune,* 8 A. B. R. 285, 115 Fed. 906.

It has been held that it is not only a right, but a duty of the trustee to refuse to take possession of property that is scheduled as an asset, unless it will be beneficial to the general creditors. *In re Dillard,* 2 Hughes 190, 7 Federal Cases 703; *Glenny v. Langdon,* 98 U. S. 20, 25 L. Ed. 43.

And that if the trustee renounces and abandons assets, the title to the same reverts to the bankrupt. The creditors are estopped from thereafter insisting that the property which was abandoned shall be considered a part of the estate. *Sparhawk v. Yerkes,* 142 U. S. 1; *Sessions v. Romadka,* 145 U. S. 29, 36 L. Ed. 609; *Taylor v. Irwin,* 20 Fed. 615.

As before stated, counsel for plaintiff contend that the Bankruptcy Act only avoids the lien in favor of the trustee, and cites cases to support the contention. But, as shown, the Supreme Court of the United States, in the *Hall* case, *supra,* holds that the effect of the statute is to annul the lien as to non-exempt, as well as to exempt property. When the lien was annulled, it cast the title to the property upon the trustee, and the trustee represents the creditors. *In re Kreuger,* 27 A. B. R. 440.

Afterwards the creditors must work out their claim through the trustee. If the trustee refuses to take possession of any property because he thinks it is a burden, the court, upon application of a creditor, could investigate the question. The trustee may act wisely or unwisely in so doing, but once he acts, the creditors are bound by his action, unless they ask a review by the court. *Glenny v. Langdon, supra; In re Dillard, supra.*

The trustee represented the plaintiff and other creditors

in refusing to take the contract Mrs. Maxson held against Van Orsdol, after she had tendered it to the trustee. The trustee doubtless had good reasons for not availing himself of the rights Mrs. Maxson had in the contract. He would have had to pay Van Orsdol at that time, all that was due Van Orsdol on the contract, with interest and taxes, and if he had done so, he could only have sold eighty acres of the land. The trustee was required to do one thing or the other. The lien had been annulled, and we think plaintiff could not say that it would permit the trustee to be discharged, and then if the property should become more valuable by reason of improvements, or increase in general land values, it would ask the state court to again establish the lien that had been annulled by the Bankruptcy Act. In the petition, plaintiff tenders to defendant, Van Orsdol, the amount that may be due upon the contract upon his assigning the same to plaintiff. It, or rather the trustee, for plaintiff and the other creditors, had that opportunity at one time, and now that the property has increased in value and improvements have been made, we think it is too late.

III. The agreed statement recites that the judgment which plaintiff is now seeking to enforce was scheduled in the Maxson bankruptcy proceedings. A debt evidenced by a judgment is provable in bankruptcy. 5 Cyc. 401. We think the discharge of the Maxsons in bankruptcy cancelled the debt.

4. BANKRUPTCY: debts provable: judgments.

IV. We are unable to see any equity in plaintiff's claim as against the Northern Iowa Land Company. The company bought the contract against Van Orsdol from Mrs. Maxson. Van Orsdol was required by the contract to deed the land on demand, which he did. The lien of the judgment had been annulled by the bankruptcy proceedings. The trustee had abandoned all the rights of the creditors in the contract and in the land. The Maxsons made improvements upon the land after the refusal by the trustee to take the property, and

5. BANKRUPTCY: estoppel: laches: subjecting land to judgment.

we think the plaintiff ought not now, after waiting six years, to come into court and ask in equity that the lien be established.

We are of opinion that the decree of the district court was right, and it is, therefore,—*Affirmed.*

DEEMER, C. J., WEAVER, EVANS and LADD, JJ., concur.