SOL H. BLOTCKY et al., Executors, Plaintiffs, Appellees, v. MINNETTE SILBERMAN, Defendant, Appellant, LIZZIE SILBERMAN et al., Defendants, Appellees.

No. 44333.

520

SEPTEMBER 27, 1938.

. Parrish, Guthrie, Colflesh & O'Brien, for plaintiffs, appellees.

Lappen, Carlson & Clarke and Emerett C. Hansen, for defendant, appellant.

Lizzie Silberman and M. N. Silberman, appellees, pro se.

MILLER, J.—On September 7, 1928, one M. Harris entered into a written contract with the defendant Lizzie Silberman by the terms of which he sold the property described as Lot 28 in Block 38 of Stewart's Addition to the City of Des Moines, to her for the sum of $2,415.50, payable $25 upon the execution of the agreement, and the balance in monthly payments of $25 each month. Following the execution thereof said defendant made the monthly payments thereon until March 1, 1936, resulting in a balance remaining due thereon on said date of $1,348.23. The 1930 taxes on said property were not paid, and on December 22, 1931, the property was sold at tax sale to E. C. Worthington. Subsequently E. C. Worthington assigned the tax sale certificate to the Hawkeye Loan & Brokerage Company, and on June 26, 1935, a notice of expiration of the right of redemption from said tax sale was served upon said M. Harris. The tax sale certificate in question was later delivered by the Hawkeye Loan & Brokerage Company to defendant-appellant Minnette Silberman, a daughter of the defendant Lizzie Silberman, and on March 7, 1936, a treasurer's tax deed was issued to her covering said described real estate.

M. Harris died February 25, 1936, and the plaintiffs-appellees are the executors of his estate, and as such instituted this action to foreclose the real estate contract and to cancel the tax deed in question, claiming that the defendants Lizzie Silberman and her daughter Minnette Silberman entered into a conspiracy for the purpose of defrauding the plaintiffs of their interest in the property involved, and thereby secured the issuance of said tax deed in the name of Minnette Silberman, asking that said tax deed be held to be fraudulently issued and void, and that the same be held to be a redemption of said property from the tax sale.

The defendant Lizzie Silberman, in her separate answer, pleads her discharge in bankruptcy as a complete defense to any personal liability on account of said contract. The defendant Minnette Silberman in her separate answer alleges that her tax deed to said property is fully valid, of full force and effect, and

superior in right to any claims of the plaintiffs; and likewise alleges that procedure in connection with the bankruptcy of Lizzie Silberman has resulted in an adjudication against plaintiffs, and that they are estopped to deny the right and title of said defendant Minnette Silberman in said property.

The defendant Minnette Silberman being the sole appellant, we are only concerned with the trial court's ruling in so far as it affects her; and in our consideration thereof, will first devote our attention to the claim that the transactions between the parties constituted fraud and conspiracy on the part of defendants Lizzie Silberman and Minnette Silberman, resulting in the same constituting a redemption from the tax sale.

I. While the facts from which the trial court found that said defendants entered into a conspiracy for the purpose of depriving plaintiffs of their rights under the contract in question are to some extent in dispute, the record reveals without dispute that following the service of notice of the expiration of the right of redemption upon M. Harris, the defendant Lizzie Silberman, on July 6, 1935, entered into a written contract with the Hawkeye Loan & Brokerage Company, the then holder of the tax certificate in question, by the terms of which she agreed to purchase said tax certificate and to pay therefor the exact amount then necessary to effect redemption of $801.27, to be paid by the payment of $300 at the time of the execution of the contract, and $75 per month thereafter, until the entire purchase price was paid in full; that the initial payment of $300 was made on July 9, 1935, followed by a $200 payment on August 2, 1935, followed by five payments of $75 each, and a final payment of $55.73 on February 4, 1936; that following the receipt of said final payment the Hawkeye Loan & Brokerage Company transmitted the tax certificate with an assignment in blank endorsed thereon to the said Minnette Silberman, who then inserted her name in said assignment; that shortly after the service of the notice of the expiration of the right of redemption upon M. Harris, one Ben B. Hockenberg, acting as an attorney for the said M. Harris, telephoned the defendant Lizzie Silberman, and as a result of said telephone call he had an interview with the said Lizzie Silberman at his office in the city of Des Moines, at which interview the conversation had reference to the tax certificate involved herein, and in said conversation the defendant Lizzie Silberman informed said Hockenberg that a written con-

tract had been made between herself and the Hawkeye Loan & Brokerage Company, and she referred him to one George Harnagle, an attorney for the said Hawkeye Loan & Brokerage Company, to see said contract. The testimony of Lizzie Silberman and Hockenberg as to the actual conversation is to some extent in dispute, but in complete accord as to matters above set out. Hockenberg testified that he advised her of the service of the notice of expiration of the right of redemption upon M. Harris; that payment of the taxes by her would amount to a redemption only and that he wanted to be sure that she would pay the taxes, and that a third party would not step in; and that she advised him she had entered into a contract with the Hawkeye Loan & Brokerage Company to buy the certificate, had made one or two payments thereon, the first payment amounting to $300; that she was going to make the additional payments, and that Mr. Harris did not have to worry about losing the property; which testimony was denied by Lizzie Silberman in that she testified that she informed Hockenberg that she was not buying the tax certificate herself on a contract, but that one of her daughters was so buying it; and she likewise denied making any statements to the effect that she would make the additional payments, or that Mr. Harris did not have to worry.

The testimony in its entirety reveals that Lizzie Silberman did enter into the written contract for the purchase of said certificate; that she informed Hockenberg of the written contract and directed him to the office of the attorney for the Hawkeye Loan & Brokerage Company to investigate said contract; that he did investigate said contract, and ascertained that under the terms thereof the defendant Lizzie Silberman was purchasing the property in question. If the defendant Lizzie Silberman, in that conversation, informed Hockenberg that it was one of her daughters who was purchasing the certificate, as she testified, there would have been ample time and opportunity for M. Harris to effect a redemption and thereby protect his interest in said property. The contract with Harris provided that Lizzie Silberman should pay the taxes upon the property in question, which taxes she failed to pay for the reason claimed by her, that she did not have any money. It is rather extraordinary that regardless of her claim that she did not have any money to pay the taxes, or to effect a redemption of the property after tax sale, and that she continued the monthly payments of $25

upon her contract with Harris, up to and including the first day of February, 1936, which last payment was just one day before the final payment made on the contract with the Hawkeye Loan & Brokerage Co. The undisputed surrounding facts and circumstances satisfy us that Lizzie Silberman represented to Hockenberg that she was purchasing said certificate, and particularly her act in referring Hockenberg to the Hawkeye Loan & Brokerage Company for investigation of the contract confirms us in the conclusion that she thereby represented and lulled M. Harris, through his attorney, into a belief that she herself was purchasing the certificate.

Being satisfied that the evidence warrants this conclusion, we are then confronted with the question of whether or not her daughter Minnette Silberman participated in this scheme of lulling Harris into such belief. While Minnette Silberman testifies, and there is no testimony to the contrary, that the payments upon the contract with the Hawkeye Loan & Brokerage Company were made from her own individual funds, yet the record fails to reveal that she herself ever made the payments directly. However, conceding that all payments made upon the certificate purchase contract were made by her, yet the evidence likewise undisputedly reveals that she knew that her mother was buying the property involved under a contract and making payments thereon. She likewise knew that the certificate purchase contract entered into with the Hawkeye Loan & Brokerage Company had been executed by her mother in her own name, and she further testified that she inserted her own name in the blank indorsement upon the certificate in question. With this knowledge upon her part we are convinced that even tho the payments upon the certificate purchase contract were made by her personally, yet she was a party with her mother to a conspiracy and fraud for the purpose of deliberately and intentionally causing M. Harris to believe that redemption from the tax sale certificate was being made by her mother, and we are therefore of the opinion that these acts of the mother and daughter did in truth and in fact constitute a redemption for the benefit of the defendant Lizzie Silberman.

II. Appellant contends that appellees are not the real parties in interest for the reason that any interest of defendant Lizzie Silberman in the real estate in question became a part of her estate in bankruptcy, and that until such interest was re-

jected by the Federal Court, it was the exclusive property of the bankrupt estate; and that the bankruptcy court has exclusive jurisdiction to deal with all the property of said Lizzie Silberman. An examination of the record fails to reveal whether or not defendant Lizzie Silberman listed any interest in this particular real estate as her property in the bankruptcy proceedings; but we are satisfied that she did not, on account of the fact that at the first meeting of creditors she was interrogated concerning the same and at said time testified that she had entered into a contract to purchase the certificate from the Hawkeye Loan & Brokerage Company, which certificate she had given to appellant, and that appellant was the owner of said property. The trustee in bankruptcy apparently accepted this statement and representation of the bankrupt as correct, as he instituted no proceedings of any sort to recover this property for the benefit of the bankrupt estate. Likewise, the record before us fails to reveal any administration or even recognition of this property in the bankruptcy proceedings. While it is true that no formal order was ever entered in the bankruptcy proceedings rejecting this property, yet it is likewise true that the same was never considered therein, was entirely ignored, and apparently not considered as an asset of said bankrupt. It is true that under the provisions of the Federal Bankruptcy Act, 11 U. S. C. A. §1 et seq., that the jurisdiction of a court of bankruptcy in administering estates of bankrupts is complete and exclusive, and that the title of all property of the bankrupt becomes vested in the trustee. It is likewise true that the Federal Bankruptcy Act does not deprive a lienor of any remedy with which he is vested by the state law, and that one holding a secured claim against a bankrupt is not bound to file formal proof of claim in the bankruptcy court, or to come into the bankruptcy proceeding at all, but he may rely upon his security and enforce it otherwise.

Corpus Juris Secundum, vol. 8, at page 952, Bankruptcy §265, uses the following language in reference thereto:

"After petition in bankruptcy. Since the trustee takes title only to the bankrupt's equity, and under the provisions of the Bankruptcy Act Sec. 67d [11 U. S. C. A. Sec. 107 (d)], a valid preexisting lien, not inhibited by its provisions is not affected by the Act, a mortgagee, unless restrained by an order of the

bankruptcy court in the protection of the bankrupt's equity in the property or otherwise, may maintain foreclosure proceedings in a state court, even after the filing of a petition in bankruptcy, especially where the trustee has abandoned the property with the approval of the bankruptcy court, and the mortgagee is the only creditor; and the state court's jurisdiction to proceed is not affected by the fact that the title of a junior lienor, who was made a party to the foreclosure suit, arose out of an assignment of the bankrupt.

"A mortgagee, who merely files his secured claim in bankruptcy, but does not have his right to foreclose the mortgage adjudicated in the federal court, which acquires no jurisdiction of the lien, is not thereby barred from suing to foreclose in the state court; nor is he estopped by such failure to sue in the state court."

■ In the instant case appellees herein did not file any claim in the bankruptcy proceedings under the contract involved; this action was not instituted until after a discharge in bankruptcy had been granted Lizzie Silberman; the property upon which appellees have a valid pre-existing lien was entirely ignored by the bankruptcy court; and no proceedings of any sort have ever been instituted by the trustee in bankruptcy or by any order of the bankruptcy court seeking to restrain this action. In view of that state of the record, we are satisfied that appellees are proper parties in interest and that the state court did have jurisdiction to proceed with the foreclosure of the valid pre-existing lien of appellees.

■ Further contention is made that the bankruptcy proceedings of Lizzie Silberman have resulted in an adjudication of this action against appellees on account of the fact that attorneys representing the Harris estate and an heir of M. Harris appeared at the first meeting of creditors therein. The record reveals that said bankrupt was indebted to appellees as executors of the Harris estate, for indebtedness other than represented in said contract, which other indebtedness was unsecured. This appearance at the first meeting of creditors without the filing of a claim upon the contract involved certainly cannot be construed as a submission of the claim under said contract to the bankruptcy court for determination, and therefore fails to establish any proceedings by appellees that would constitute a

submission of the matters involved in this lawsuit to the bankruptcy court for adjudication.

III. Appellant makes the further contention that appellees have failed to show facts necessary to defeat a tax deed as provided in section 7289 of the Code of Iowa; and that therefore their petition must be dismissed. Having heretofore determined that the transactions between the parties reveal conspiracy and fraud upon the part of defendants, resulting in said transactions in fact amounting to a redemption, the tax deed is necessarily void. As a result thereof we are satisfied that said section 7289 of the Code is not applicable in the instant action. This court in Guldner v. Guldner, 199 Iowa 986, 203 N. W. 289, 291, used the following language [page 992]:

"Of course, fraud in the procurement of the tax deed will always be available as a basis for equitable relief. Connolly v. Connolly, 63 Iowa 202, 18 N. W. 868; Leas v. Garverich, 77 Iowa 275, 42 N. W. 194. It need not be actual fraud, but may be constructive fraud. First Cong. Church v. Terry, 130 Iowa 513, 107 N. W. 305, 114 Am. St. Rep. 443; Ellsworth v. Cordrey, 63 Iowa 675, 16 N. W. 211; Dohms v. Mann, 76 Iowa 723, 39 N. W. 823; Lynn v. Morse, 76 Iowa 665, 39 N. W. 203."

Being satisfied that the decree of the trial court was correct, it follows that the same must be and it is hereby affirmed.—Affirmed.

SAGER, C. J., and ANDERSON, MITCHELL, KINTZINGER, HAMILTON, DONEGAN, and STIGER, JJ., concur.