A. H. MATTHEWS, Trustee, Appellee, v. CONCRETE ENGINEERING COMPANY, INC., Appellant.

No. 45141.

May 14, 1940.

Boardman & Cartwright, for appellant.

Clive Matthews, for appellee.

Richards, J.—In an action at law instituted by defendant against Fred J. Buchwald on March 25, 1937, levies under a writ of attachment were made on March 25, 30, and 31, 1937, upon certain of Buchwald's property. On May 12, 1937, a petition that Buchwald be adjudged a bankrupt was filed by creditors in the United States District Court. He was so adjudged on June 12, 1937. Plaintiff trustee of the estate in bankruptcy of Fred J. Buchwald, invoking the provisions of the Bankruptcy Act and particularly section 67, 11 U. S. C. A. §107, brought the instant suit in equity, seeking to have dissolved and held for naught the writ of attachment and the levies made thereunder, and to have the title to the attached property confirmed in plaintiff. The cause was tried on the merits on September 15, 1938. A decree was rendered on July 18, 1939, dissolving, setting aside and holding for naught the attachment and attachment liens arising out of the levies and establishing, free therefrom, the trustee's title in the attached property. Therefrom defendant has appealed.

The provisions of the Bankruptcy Act are such that it was essential to the trustee's cause of action that it appear that appellant's attachment lien was obtained while Buchwald was insolvent. The person attacking the lien must show that the debtor was insolvent when the lien was obtained. Liberty National Bank v. Bear, 265 U. S. 365, 44 S. Ct. 499, 68 L. Ed.

1057. The one proposition relied on by appellant for reversal is that the insolvency was not proven. We turn to the record.

Debts owing by Buchwald at the time of the levying of the attachment were shown in the amount of $13,895.33, and the sufficiency of that showing is not attacked. What appellant deems controversial is whether, at a fair valuation, Buchwald's property was sufficient in amount at the time of the levy to pay the $13,895.33.

Appellant states, and stresses in argument, that appellee's own evidence shows that the fair valuation of Buchwald's property was $19,877.37, rather than $10,390.52 as claimed by appellee. In arriving at the $19,877.37 one of the amounts appellant includes is $7,000 as the fair valuation of the book accounts growing out of Buchwald's retail lumber business. The bookkeeper for the business, as appellee's witness, stated that the accounts receivable on the books of the lumber business appear to be around $7,000, but that that amount was incorrect. Appellant urges that because appellee's evidence does not reveal the particulars of the inaccuracy there is no competent evidence of any value other than $7,000. But to us it does not so appear. The bookkeeper testified that payments that had been made of many of the accounts did not appear on the books, and that in trying to collect the accounts she discovered 25 or 30 instances where the apparent debtor held indisputable evidence of payment. Aside from mentioning $1,000 as the amount of one such account and $600 as the amount of another, it is true that the witness did not in her testimony segregate or schedule the accounts she knew had been paid. But on April 20, 1937, these accounts were turned over for collection to an attorney and to the manager of an adjustment company in Marshalltown engaged in the business of collecting accounts. The manager later became the trustee who is now appellee. The attorney and the manager worked in concert on the accounts and the record convinces us that they made unusually diligent and continuous efforts to collect the accounts, with the result that the gross amount realized was $1,367.38. They con-

tinued their efforts until some time in September 1938. Thereafter the trustee was not able to make further collections on the accounts. In two days in April 1937 over $3,000 of the accounts were eliminated by the attorney and the manager on account of canceled checks or other satisfactory proof of payment having been produced by the supposed debtors. The manner and circumstances of the conducting of the business for many months prior to March 1937, the details of which are conceded and need not be set out, are wholly consistent with the condition of the books as described by the witnesses. In judging the fair valuation of property its characteristics are to be taken into consideration. With respect to accounts the fair valuation is what with reasonable diligence can be realized from their collection within a reasonable time, and the amount as shown on the face of ordinary retail business accounts is not usually their fair value, though of course accounts may be such that their face value as a matter of fact is their fair value. Plymouth Cordage Co. v. Smith, 18 Okl. 249, 90 P. 418, 11 Ann. Cas. 445. This is the reasonable view unless no consideration be given the nature of such assets. Appellee's showing did not depend solely upon the bookkeeper's testimony, nor can we agree with appellant that there was no competent evidence to show the actual value as being an amount other than $7,000. The conjectural value of the accounts at the time of the attachment, that is, what could have been realized from their collection within a reasonable time with reasonable diligence, became a demonstrated fact a short time thereafter, if we view the testimony respecting the collecting as true, particularly the testimony of those who made the collections that all was realized that was possible of being collected, and we do so view the testimony and record. The appellee in arriving at his total of $10,390.52 in assets includes the gross amount of $1,367.38 that was realized on these accounts without deduction of the considerable necessary expenses that were incurred. To us it appears that upon the record the accounts should not be considered as having a fair valuation of $7,000, and that there is competent evidence clearly showing

that their fair valuation was an amount not in excess of that adopted by appellee.

In arriving at the aggregate value of $19,877.37, appellant includes $2,922.37 as the value of the stock of lumber and fixtures and equipment at the lumberyard. Appellee claims the value of this personalty was $1,560.40 being the aggregate of $1,312.40 and $248. The $248 item was the amount actually realized for broken lots of stock, and cement that had hardened. The $1,312.40 item is the value of all the remaining personal assets in the lumberyard as appraised on April 20, 1937, by two appraisers appointed by the sheriff. It is conceded that until appraised the lumberyard had been in the exclusive possession of the sheriff who had levied on the property on March 20, 1937, under a special execution in another action in which these parties were not concerned. In view of the stipulation by appellant and appellee that the two appraisers were the owner and manager respectively of two large retail lumber and building supply establishments in Marshalltown, and were qualified to testify as experts as to the condition, quantity, quality and value of all this personal property, and in view of the testimony that these two appraisers exercised their general knowledge of the cost of such property and made every effort to arrive at a fair and reasonable value of the property, we are of the opinion that the court rightly found that the fair valuation of the property was approximately the appraised value. The criticisms that appellant makes are two in number. One is that the stock of lumber was appraised at actual wholesale value. The record is that the retail value would have required a markup of 25 percent on the $745.70 wholesale price of the lumber. But "fair valuation" mentioned in the Bankruptcy Act: " * * * excludes, on the one hand, the sacrifice price that would result from an execution or foreclosure sale, and, on the other hand, the retail price that could be realized in the slow process of trade. This latter value should be excluded because it could only be gained by large expense and the many risks of a mercantile venture." Stern v. Paper et al., [Dist. Ct., N. Dak.] 183 F. 228, 231. The

other criticism is that some of plaintiff's witnesses stated it as their opinions, based on general observation, that the stock in the lumberyard ranged in value from $3,000 and $2,000 on various dates in 1937 prior to March 20th, to practically nothing as stated by one of these witnesses. Appellant adopts the opinion of the witness whose estimate on March 3, 1937, was $3,000. But appellee was not bound by the opinion expressed by any particular one of his witnesses, and it was the function of the court to decide the case upon all of the admissible evidence. The testimony of the appraisers, besides being based on concrete knowledge of what the property was, appears to be the only testimony that pertained to the value at the very time in question, that is, when the attachment was levied. In our opinion the only finding of fact, from the testimony offered by appellee, or appellant, that is satisfying and reasonable is that the fair valuation of the personalty in the lumberyard when the attachment was levied was approximately $1,560.40.

■ One of the real-estate items was a filling station and lunchroom upon which appellant, in arriving at the $19,877.37, places a value of $4,500. He introduced two real-estate agents who stated that in their opinions respectively, the value was $4,000 and $4,250. For the $4,500 valuation appellant's reliance is on testimony that, several years previously, at the time the sale of beer became lawful, Buchwald had received an offer of $4,500. It is not claimed any offer had been subsequently made by anyone. In view of all the evidence, including appellee's showing of the nature and condition of the property together with testimony of other experts whose opinions were much more conservative than those of defendant's two witnesses, the reasonable finding is that the fair value of this property did not exceed $2,600. Appellant values a Hudson automobile at $450 though the only direct testimony was that its value was $375.

The fair values of the other items of property are claimed by appellant to be larger than those asserted by appellee, in an aggregate amount of $245. The claim is based on the only evidence respecting values, offered by appellant, other than

that we have set out. If this contention were to be conceded, yet the foregoing demonstrates that Buchwald was insolvent when the attachment was levied. The trial court rightly so held. The decree from which defendant has appealed is affirmed.—Affirmed.

MILLER, OLIVER, HALE, BLISS, SAGER, and MITCHELL, JJ., concur.