FAITH MOFFITT et al., Appellants, v. DENNISTON & PARTRIDGE COMPANY et al., Appellees.

No. 45302.

Charles Elick and M. R. Hammer, Jr., for appellants.

Campbell & Campbell, for appellees.

HALE, J.—Plaintiffs, on December 27, 1939, filed petition for injunction, asking that defendants, Denniston & Partridge Company and Ray E. Barber, sheriff of Jasper county, be restrained from selling plaintiffs' homestead under a judgment on plaintiffs' note executed subsequent to the acquisition of their homestead, claiming that the lien of the levy, if any, was dissolved by their adjudication as bankrupts. Temporary injunction issued. Defendants' answer alleged: (1) That the indebtedness represented by the judgment was for material furnished and used exclusively for the improvement and construction of a dwelling house on the homestead; (2) that said indebtedness was contracted prior to the acquisition of the homestead by the plaintiffs; (3) that plaintiffs were not insolvent at the time of their adjudication as bankrupts and that the land is not exempt from the lien of the defendants' levy under general execution. After answer, a motion was made on similar grounds to dissolve the injunction. On hearing, the temporary injunction was dissolved and plaintiffs' petition dismissed on its merits, and plaintiffs appeal.

On January 8, 1940, the cause came on for trial and it was stipulated: That Faith Moffitt, plaintiff, took title to the 40 acres in controversy under the will of her uncle, George Blanford, who died January 21, 1931, and that she became the owner from that date.

"That on September 29, 1939, Denniston & Partridge Co. took judgment against Faith Moffitt and Marlin Moffitt in the District Court in Jasper County on a promissory note, for

$1,640.96 with six per cent interest and costs of $62.75, and that on December 5, 1939, said company caused the Clerk of said Court to issue to the Sheriff of Jasper County a Writ of General Execution against said Faith and Marlin Moffitt under said judgment and caused the Sheriff to levy said writ upon said real estate, and that said Sheriff has advertised said land for sale under the execution as provided by statute, on the 6th day of January, 1940, and has given said Faith and Marlin Moffitt notice in writing of said sale as provided by statute.

"That after the injunction was issued in this cause parties to this action agreed that said sheriff's sale should be postponed until 10 A. M. January 9, 1940, and that the sheriff attended the place of sale at the time on January 6, 1940, and did postpone said sale until January 9, 1940, at 10 A. M.

"That on December 9, 1940, said Faith and Marlin Moffitt each filed a petition in voluntary bankruptcy and on said date each was duly adjudicated a bankrupt.

"That in her said petition in bankruptcy said Faith Moffitt scheduled the indebtedness in the total amount of $2,451.27, and that she scheduled as assets the above described real estate by her valued at $75.00 per acre having a total value of $3,000 together with a beneficiary interest in her husband's life insurance policy, which interest has no present value, and that she claimed all the assets exempt from administration and asked that the same be set aside to her as exempt.

"That in his petition of bankruptcy said Marlin Moffitt scheduled the same indebtedness as Faith Moffitt, and that he scheduled assets as follows:

"Inchoate dower right in said real estate, no present value.

"Family furniture, $150.00,

"Livestock, $149.20,

"1930 automobile, $25.00,

"1930 truck, no value,

"Life insurance policy, no value,

"and that he claimed all of said assets as exempt from administration, and asked that the same be set aside to him as exempt.

"On December 26, 1939, said bankruptcy court by order set apart to said bankrupts as exemptions and unadministered

by said bankruptcy court all of the assets and property of said bankrupts as above stated, that the bankrupts have not transferred any property since prior to four months from the filing of said petitions in bankruptcy, that they have not cancelled or satisfied any indebtedness since prior to said four months, and that the property assets, debts and liabilities of said bankrupts and during such time and now are substantially as above stated.

"That on December 27, 1939, said Faith and Marlin Moffitt each served upon such sheriff a written notice as required by statute demanding he release said real estate from the levy of said execution, on the ground that the same is exempt to them as their homestead and thereupon defendant company executed and delivered to the sheriff an indemnifying bond as provided by statute and instructed the sheriff to proceed with the execution sale. That said judgment of the company was rendered on Sept. 29, 1939, duly entered of record and is indexed in the lien index of said court.

"That Faith Moffitt still owns said land and that Faith and Marlin Moffitt, residents of Iowa, are married to each other and live on and occupy said real estate as a family; that they have no property other than that above listed and that said property is exempt from general execution except for the controversy in this case as to which no concession is made by either party."

The original notice, in the usual form, on which judgment was entered, was also made a part of the stipulation. The note was dated June 30, 1931, was for the sum of $1,087.49, due March 1st after date, interest at seven percent, and signed by plaintiffs, and shows various endorsements showing payments of about $114. Oral evidence for both plaintiffs and defendants was introduced and will be referred to hereafter.

The plaintiffs argue that the court was in error in its ruling, and that none of the grounds of defendants' motion should be sustained. They attack the court's interpretation of that part of section 10155, Codes of 1935, 1939, reading:

"The homestead may be sold to satisfy debts of each of the following classes: * * *

"3. Those incurred for work done or material furnished exclusively for the improvement of the homestead. * * *"

I. Plaintiffs' contention is that a claim for material furnished for the exclusive improvement of a homestead can be enforced as a mechanic's lien only. There is no doubt that the materials for which the note in judgment was given were for the exclusive improvement of the homestead. Defendants' witnesses so testify and are supported by the admissions of plaintiffs in their testimony. Plaintiffs devote considerable time and space to their argument that changes in the original language of a statute affected by a general revision or codification do not alter or change the meaning or construction to be given to a statute (a) where it is clear that a change was not intended, and (b) unless it is clear that a change was intended. We may assume that this statement of the general rule is generally correct. Plaintiffs cite Delavan v. Pratt, 19 Iowa 429, 432, holding that the homestead would not be liable to sale for materials furnished therefor "except as for a mechanic's lien." At that time the Revision of 1860 was in force providing in section 2280 that the homestead "is also subject to mechanic's liens in the cases provided by law." In substance the statutes so provided until the adoption of the Compiled Code, 1919, when the section (6417) read: "The homestead is subject to mechanics' liens for work, labor or material done or furnished exclusively for the improvement of the same." In 1923, following the report of the Code commission, various bills were passed and became laws. Among them was chapter 237, Laws of the Fortieth General Assembly, relating to homesteads, containing what is now section 10155, subsection 3, which is quoted above. It may be noted that this section is found in the chapter relating to homesteads and not to mechanics' liens. Plaintiffs refer to the report of the Code commission, which states that the section was modified by omitting mechanics' liens as superfluous. Just what was meant by that statement may be open to argument, but the legislature passed the act as it now appears and we are inclined to believe that it means what it says. Plaintiffs also state, and cite the report for that purpose, that the general purpose of the codification was not to change the laws but to rearrange and com-

bine sections into more logical order; and cite also a part of section 8, chapter 223, Laws of the Fortieth General Assembly, reading: " * * * but this section shall not be construed as changing the meaning of any law." This chapter relates to the Compiled Code and the designation of such Code and Session Laws. But the entire first paragraph of section 8, from which the above quotation is taken, reads:

"Sec. 8. Compiled Code and supplement. The compiled code and the supplement to the compiled code submitted to the general assembly as a part of the code commissioners' report are adopted as an official code of Iowa, for convenience of reference in bills relating to the amendment, revision and codification of the laws; but this section shall not be construed as changing the meaning of any law."

The second paragraph of section 8 relates to reference to the Compiled Code or Supplement, which shall have the same effect as a reference by title, chapter or section, to Session Laws or former compilations. It is plain the reference of the part cited is only as to section 8.

Plaintiffs also cite various authorities relating to the interpretation and effect of amendments or changes in the law. Without attempting to set out in detail the rulings in the large number of cases cited, it may be briefly stated that in some there was merely editorial re-arrangement, in others the amendment or revision worked no changes in meaning, only a change of phraseology, and others refer to the omission of redundant or unnecessary phrases. Other authorities merely refer to the general rule of revision or codification. In the law as it now appears we are convinced that there is no reason to read into the section any other and different meaning than what it clearly expresses.

█ Originally it was provided by the mechanic's lien law, by virtue of the statute (chapter 111, Laws of the 9th G. A., 1862) that the failure to file the claim did not operate to defeat the claim or demand, nor the lien of the person supplying the labor or material as against the owner or against anyone except purchasers or incumbrancers. Gilcrest v. Gottschalk, 39 Iowa 311, 314. The mechanic's lien laws as they now stand are mostly concerned with the question of priorities. And it is provided in section 10278, Codes of 1935, 1939, that "* * * A failure to file the same

within said periods shall not defeat the lien, except as otherwise provided in this chapter.'' The limitation on actions, found in Code section 10296, would prevent such action of foreclosure of the lien, had one been filed, but we do not think it prevents the right to levy under judgment, under section 10155 of the homestead law—an independent statute and relating only to the nonexemption of the homestead for specific debts. In the instant case there arises no question of priority. No rights of other parties are involved. The controversy is between the original parties. The judgment was for materials used in the improvement of their homestead. Plaintiffs assert that the failure to file a mechanic's lien will deprive defendants of their right to recover the amount of their claim through execution and levy. We are not prepared to say that, with the law as it now stands, and as adopted by the legislature with the apparent intent to make the homestead liable for the improvements that were furnished for it, the defendants are not entitled to be reimbursed—no other rights being involved. The principle is much the same as liability for the purchase price. Support for our views is found in the case of Hasey v. McMillen, 109 Minn. 332, 335, 336, 123 N. W. 1078, 1079, 1080, in which, in interpreting a provision of the constitution similar to our statute, the court holds that a specific lien may be acquired in one of three ways: ''(a) He may, within the time fixed by law, file a lien statement under the mechanic's lien statute; (b) he may cause the land to be attached in an action to recover upon his claim; or (c) reduce his claim to judgment and docket it in the office of the clerk of the district court.'' Citing Bagley v. Pennington, 76 Minn. 226, 78 N. W. 1113, 77 Am. St. Rep. 637. See also Westerman Lumber Co. v. Raschke, 172 Minn. 198, 215 N. W. 197.

The lien obtained by judgment and levy under general execution, under the provisions of Code section 10155, under the facts in this case, could be enforced against the homestead, no other's rights having intervened, although the right to foreclose under the mechanic's lien statute had been lost.

Our holding as to the first part of the defense pleaded by defendants would require an affirmance, unless the right to levy under execution was avoided by the bankruptcy proceedings.

■ II. The plaintiffs claim the benefit of the adjudication in bankruptcy, and that the homestead was set off to them as exempt, whereby the liens obtained by judgment and levy thereunder were annulled and destroyed. Defendants' answer to this claim, in addition to their claim that the account was a pre-existing debt, is that at the time of such adjudication of bankruptcy, the plaintiff Faith Moffitt was not in fact insolvent, and that therefore the rule that such claims should be set aside does not apply.

We have had occasion to consider the effect of these statutes at various times. In Peoples Nat. Bk. v. Maxson, 168 Iowa 318, 150 N. W. 601, plaintiff was the holder of a judgment rendered within the four-month period prior to the the adjudication. The court followed the rule laid down in Chicago, B. & Q. R. R. Co. v. Hall, 229 U. S. 511, 512, 33 S. Ct. 885, 56 L. Ed. 1306, holding that all liens obtained by legal proceedings within the four-month period were null and void. Bank v. Maxson, supra, was followed and quoted from, as was the case of Chicago, B. & Q. R. R. Co. v. Hall, supra, in the later case of McMains v. Cunningham, 214 Iowa 300, 242 N. W. 106 (decided in 1930), holding that whether the property is exempt or nonexempt under the statute, the lien so obtained is discharged by the adjudication in bankruptcy, and the judgment upon which the execution issued is likewise discharged. Justice Faville's opinion in that case, in which a rehearing was denied, was followed by Bracewell v. Hughes, 214 Iowa 241, 242 N. W. 66, wherein, in an opinion by Justice Albert (but in which case a dissenting opinion was filed), the rule was laid down that an unquestioned order in bankruptcy setting off to a bankrupt certain land as a homestead is, as to all parties to the proceedings, a final adjudication that said land was a homestead; and after a court has adjudicated a debtor to be a bankrupt, and after the court has set off a homestead to said debtor, a creditor holding a duly scheduled, unliquidated, and unsecured debt, has no right to proceed in equity in the state court and have his debt adjudicated and enforced as a lien on said homestead because said debt antedates the acquisition of said homestead. This language from the headnotes is, in substance, the holding in that case.

But in none of the cases above cited was the question of the debtor's insolvency at the time of the acquisition of the lien setting off the homestead raised or discussed. Defendants earnestly urge that under the general rule their lien was not set aside, although within four months before bankruptcy, because the bankrupts were not insolvent. They cite the general rule: An adjudication in bankruptcy avoids all liens obtained against the property of the bankrupt through legal proceedings, while he is *insolvent,* and within four months prior to the filing of the petition in bankruptcy. 8 C. J. S., section 245, page 904, citing subsections 67-c and 67-f of the Bankruptcy Act (11 U. S. C. A. 107-c and 107-f). Our more recent cases, including Blotcky v. Silberman, 225 Iowa 519, 281 N. W. 496, and Matthews v. Concrete Engineering Co., 228 Iowa 493, 494, 292 N. W. 64,. 65, hold to the rule that insolvency must be shown in order to set aside a lien obtained by legal proceedings.

Such is the wording of the law as found in section 107 of the Bankruptcy Act above cited, in subdivisions c and f. And see also 8 C. J. S., section 247, page 911, where the. language of the text—''Insolvency of the debtor at the time the lien was obtained is, under the statute, essential to the avoidance of a lien obtained through legal proceedings within four months prior to the petition in bankruptcy.''—is supported not only by the language of the statute but by many holdings of the courts cited therein. In the recent Matthews case, supra, it is said:

''The provisions of the Bankruptcy Act are such that it was essential to the trustee's cause of action that it appear that appellant's attachment lien was obtained while Buchwald was insolvent. The person attacking the lien must show that the debtor was insolvent when the lien was obtained. Liberty National Bank v. Bear, 265 U. S. 365, 44 S. Ct. 499, 68 L. Ed. 1057.''

In that case attachments were levied on March 25, 30, and 31, 1937, and the adjudication of bankruptcy was made on June 12, 1937. In the instant case the petition in bankruptcy scheduled indebtedness of the owner (and her husband) of $2,451.27, and as assets the land valued by her at $3,000. Witnesses placed the value of the land at $4,000. Plaintiffs offered no testimony as

to value of the land or other property, aside from the stipulation. The aggregate value of the property being sufficient to pay debts, plaintiffs would not be deemed insolvent. 8 C. J. S., section 214 (b), page 701. Plaintiff-owner of the land was not, therefore, insolvent. See Des Moines Sav. Bk. v. Jewelry Co., 123 Iowa 432, 437, 99 N. W. 121, 123; Bankruptcy Act, Title 11, section 1. We must therefore hold that under the evidence and the circumstances the plea of bankruptcy will not avail to avoid the judgment and execution lien.

Other questions raised need not be considered since, for the foregoing reasons, we conclude that the ruling of the district court is correct and should be affirmed.—Affirmed.

RICHARDS, C. J., and STIGER, HAMILTON, SAGER, BLISS, and MILLER, JJ., concur.